ACTON C. HARTSHORNE (WHO SUES FOR THE USE OF
HIMSELF AND C. S. HOLMES AND TUNIS V. SCHANCK),
v. THE AGRICULTURAL INSURANCE COMPANY, OF
WATERTOWN, NEW YORK.

1. A policy of fire insurance upon a farm-house and buildings contained
   a condition that if the dwelling-house insured should be unoccupied,
   and ceased to be occupied as a dwelling without the consent of the
   company, then, so long as it shall be so unoccupied, the policy should
   be void. In an action upon the policy it appeared that the occupant
   moved from the house, taking with him all the furniture except a bed-
   stead and a small strip of carpet. For a month after his removal one
   of his sons slept in the house, when the weather became so cold that
   the house was abandoned. Six or seven weeks after, the house was
   burned.—*Held*, that the proposition whether the proven facts estab-
   lished such an occupation as the condition of the policy contemplated
   was properly solved in the negative, by the court. *Sonneborn* v. *Manu-
   facturers' Ins. Co.*, 15 *Vroom* 220, followed.

2. The condition referred to, applies to all the subjects of the insur-
   ance and brings them all within its force and effect, and a compliance
   with its terms was requisite to the validity of the policy as to each item
   of property insured.

On error to Monmouth Circuit Court.

This action was brought upon a policy of insurance, dated
on July 2d, 1883, and issued to Acton C. Hartshorne, as
owner, which provides that the loss under it, if any, shall
be paid to C. S. Holmes and Tunis V. Schanck, mortgagees,
as their interest might appear.

In consideration of a premium of $26.53, Mr. Hartshorne
was insured for three years, from July 2d, 1883, in the sum of
$3525, against loss or damage by fire and lightning to prop-
erty which was described in the policy as follows:

"$1600 on dwelling-house; $25 on hen-house; $75 on
hog-house; $400 on barn No. 1; $300 on barn No. 2; $200
on barn No. 3; $75 on corn-crib; $400 on corn-barn; $400
on grain therein; $250 on hay, grain and straw in barn No.

1; $100 on hay and grain and straw in barn No. 3; $100 on corn in crib.    Total, $3525."

The policy contained a condition in the following words:

"If, at the time of effecting this insurance, any dwelling-house hereby insured shall be unoccupied, and not so stated on the application, and the written consent of the company endorsed upon this policy; or if, without such written consent endorsed hereon, such dwelling-house shall cease to be occupied as a dwelling, then, so long as said dwelling-house shall be so unoccupied, this policy shall be void, and of no force or effect."

On the 1st day of March, 1886, the barns and nearly all the other out-buildings were consumed by fire, and two weeks later the dwelling-house was likewise burned.

The plaintiff established, by the proofs he offered, that the insured property constituted the buildings of a farm near Freehold that had been leased by Mr. Hartshorne to Alfred L. Conover for one year, from April 1st, 1885; that Conover occupied the dwelling-house from the commencement of the term of his tenancy to the 22d day of December, in the same year, and then moved to an adjoining farm, about five hundred yards from the insured buildings, taking with him all the furniture from the dwelling except a bedstead, some bedding and a small strip of carpet; that for a month after Mr. Conover had moved from the dwelling one of his sons slept in it; that the weather then became so cold that the house was suffered to remain without an occupant until it was burned, six or seven weeks thereafter; and that at the time of the first fire the out-buildings were used for the storage of some farm produce, and the housing of some cows, hogs and poultry which belonged to Mr. Hartshorne.    He then insisted that the insurance was divisible into several contracts, and offered to show that in making the premium to be paid for the insurance, the defendant varied the percentage upon the risks on the different buildings, and took the aggregate of all

for the premium named in the policy. This offer was over-ruled by the trial court.

No consent to the non-occupancy of the dwelling-house was endorsed upon the policy, or otherwise proven.

The proofs on the part of the plaintiff were closed, and, upon motion, the court non-suited him, but allowed excep-tions to its rulings.

For the plaintiff in error, *Richard V. Lindabury*.

For the defendant in error, *James Buchanan* and *A. H. Sawyer*.

The opinion of the court was delivered by

THE CHANCELLOR. The plaintiff now insists, first, that the question of occupancy of the dwelling-house should have been left to the jury; second, that the contract of insurance was so divisible that the validity of the policy, so far as the insurance of the out-buildings was concerned, did not depend upon the occupancy of the dwelling-house; and third, that the evidence which he offered, to show different rates of pre-mium charged for the insurance of the several buildings, should have been admitted.

The justice at the Circuit did not err in taking the question as to the occupancy of the dwelling-house from the jury. There was no question as to what the proofs established. The only inquiry was whether the proven facts established such an occupation as the condition of the policy contem-plated. That proposition, properly, was solved by the court.

That the court was correct in its solution of it there can be no doubt. The policy provided that if the dwelling-house should cease to be occupied as a dwelling, then, so long as it should be unoccupied, the contract of insurance would be void.

The word "unoccupied," as used in contracts of this kind, has received judicial construction in this court, in the case of *Sonneborn* v. *Insurance Company*, 15 *Vroom* 220. Judge

Green, who delivered the opinion of the court, there said that such word is always to be construed with reference to the nature and character of the building, the purposes for which it is designed, and the uses contemplated by the parties, as expressed in the contract; and that a dwelling-house, being designed as the abode of mankind, is occupied when human beings habitually reside in it, and unoccupied when no one lives or dwells in it.

In that case the assured sent a servant to live with his family in a portion of a summer residence. On March the 22d, the servant assumed general charge of the place, working in the yard and garden, taking care of the stock in the barn, and occasionally going through the dwelling-house. In consequence of the sickness of his wife, he did not live in the dwelling-house, as it was intended he should, but temporarily boarded at a neighbor's, about a quarter of a mile away. He slept and had breakfast and supper at his boarding place, and when he went to work carried his dinner with him and ate it upon his master's premises. On April 19th, the dwelling, with the furniture in it, was burned. On the same day the servant's wife and children arrived, prepared to commence residence in the building that had been destroyed. The court held that the supervision of the premises by the servant, and his continuous work upon them, fell short of that which is necessary to constitute an occupancy of the dwelling.

The case under consideration is, in many respects, weaker than Sonneborn v. Ins. Co. There, the house was furnished, while here, it contained a single bed. There, a trusted employee, throughout the day, worked upon the place, caring for the assured's stock in the barn and frequently examining as to the condition and welfare of the house; while here, an abandoning tenant occasionally looked after that which he had left in the out-houses. There, occupation was temporarily deferred until the arrival of the watchman's family; while here, a feeble, nominal occupation was abandoned because the cold rendered the trouble and expense of a fire necessary. There, it was obviously the pur-

pose to amply protect the property; while here, the watchman was indifferent to any fate that might await it.

When one lives and dwells in a house, it is the customary place of his abode, not of necessity absolutely and uninterruptedly continuous, but the place of his usual return and habitual stoppage.

It was not pretended that any one thus lived in the house of Mr. Hartshorne, but, on the contrary, it cannot be questioned that the house was not thus occupied.

I think that the trial justice was correct in his determination of this question.

In consideration of the second proposition, I have concluded that it is not necessary to go exhaustively into the question whether the policy before us may be regarded as several contracts for the insurance of distinct parcels of property enumerated in one document. So far as the condition in question is concerned, I think it may not be so regarded. By the literal reading of the condition which is relied upon as a defence to the plaintiff's suit, it is apparent that it applies to all the subjects of the insurance, and brings them all within its force and effect; and from the nature of the contract, whether it be divisible or not, we are constrained to infer that the existence of the condition had a potent influence in securing the assumption of the entire risk, for it is a matter of common knowledge that a farm, with its dwelling and out-buildings, constitutes a single establishment, generally remote from other habitations, and that the protection of the whole must, in a great measure, depend upon the occupants of the dwelling. Almost without exception the out-buildings of a farm are clustered about a place of abode, and for that reason are deemed to be more secure than the occasional out-lying barn or crib, which, because of its isolation, becomes the bane of its apprehensive owner. It seems to be impossible not to assume, in this case, that the proximity of the out-buildings to the dwelling, influenced the insurer to enter into its contract or contracts under the protection of the condition here questioned. It is natural and reasonable that it should be held to have intended

that the continuance of the insurance upon all the subjects thereof was to depend upon the occupation of the dwelling. I fail to perceive anything, either in the language of the condition or in its reasonable application, that should lead to the determination that compliance with its terms was not requisite to the validity of the policy as to each item of property insured.

It follows, from this view of the force of the condition in question, that the exclusion of the evidence that was offered for the purpose of establishing the divisibility of the insurance did not work injury to the plaintiff, and that therefore it is not necessary to pass upon its competency.

The judgment of the Circuit Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, REED, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, PATERSON, WHITAKER. 14.

*For reversal*—None.