THE REPUBLIC COUNTY MUTUAL FIRE INSURANCE COM-
PANY v. JOHN T. JOHNSON.
No. 13,593.    (76 Pac. 419.)

SYLLABUS BY THE COURT.

FIRE INSURANCE— *When a Policy is Not Severable.*    Although a
policy of insurance against fire, lightning, tornado and wind-
storm, so written as to place separate valuations upon separate
subjects of insurance, will ordinarily be severable, it will not be
so if the risk intended to be excluded by a condition which has
been violated affected the item of property for the destruction of
which a recovery is sought.

Error from Republic district court ; HUGH ALEXAN-
DER, judge.    Opinion filed April 9, 1904.    Reversed.

*Jay F. Close*, for plaintiff in error.

*W. T. Dillon*, for defendant in error.

The opinion of the court was delivered by

BURCH, J. :  A policy of insurance against loss by fire, lightning, tornado and wind-storm covered a dwelling-house, a double corn-crib with a stable addi-

tion, and hay and grain, all situated on the east half of the northwest quarter of section 22, township 2 south, range 4 west of the sixth principal meridian, in Republic county. A single premium was paid for the entire policy, but the insurance was distributed upon separate items of property as follows : House, $125; hay and grain, $80; double corn-crib, $95. The policy contained a provision that it should become void ''. . . if the above-mentioned premises . . . become vacant for thirty days.''

The corn-crib stood some 200 or 300 feet from the house. About the site of the buildings were a few fruit-trees and a small orchard, and all together they fixed the dwelling-place of occupants of the farm. There were no other buildings on the land. At the date of the policy the house was occupied as a dwelling by a tenant of the land. Subsequently the tenant moved away and the owner of the land farmed it from his own residence on an adjoining tract. During the period the double corn-crib was used for the purpose of housing unused farming implements, including a self-binder, two listers, a riding-plow and a stalk-cutter. More than thirty days after the removal of the tenant a wind-storm destroyed the double corn-crib. In an action upon the policy against the company issuing it, the assured recovered a judgment for the value of the double corn-crib, and the question now to be determined is, Were the premises vacant, within the meaning of the contract of insurance?

To sustain the judgment rendered, the doctrine of the divisibility of insurance contracts must be given an application so strained and so extreme that the agreement of the parties must be entirely ignored. The argument in brief is that the relations between the insurer and the assured were the same as if

separate policies had been issued, one covering the house, another covering the crib, and the third the hay and grain ; that hay and grain could not become vacant at all ; that human beings were not expected to occupy the double crib with its stable addition, which was properly usable for the storing of machinery, and that the vacancy of the house had no bearing whatever upon any other subject of insurance.

In adopting the theory of the divisibility of insurance contracts which place separate valuations upon separate subjects of insurance (*Insurance Co. v. York*, 48 Kan. 488, 492, 29 Pac. 586, 588), this court quoted extensively from the opinion of Mr. Justice Folger in the case of *Merrill v. Agricultural Ins. Co.*, 73 N. Y. 452, 29 Am. Rep. 184. A portion of that opinion bears directly upon the proposition under discussion, and is as follows :

"Where a separate valuation has been placed upon different subjects of insurance, as $800 on a dwelling-house and $200 on household furniture, the contract is severable and not indivisible. . . . Again, the principle in the case of a contract about several things, but with a single consideration in gross, is this : that we are not able to say that the party would have agreed for one, or for more than one, yet less than all of them, without he could at the same time acquire a right to have them all. But our daily experience and observation show that an insurance company is as ready to insure buildings without insuring the contents, and the contents without insuring the buildings, as to insure them together ; so that that principle does not press so hard in considering such a contract as that before us."

In the policy under consideration there is nothing whatever to indicate that the company would have insured the hay and grain at all except as it fell under the protection of a guardian of the premises, or that

it would have entertained for a moment an application for the insurance of an isolated, unfrequented corn-crib and stable, the prey of the elements, devoted merely to the shelter of unused implements and machinery and subject to be made the rendezvous of tramps. To assume that it would have done so involves an absolute and perfectly arbitrary repudiation of the conspicuous purpose of the vacancy clause in the contract. Any ordinary individual in charge of premises would exercise a preservative superintendence over them—would take some steps to anchor a ruffed or toppling stack of hay before he would suffer it to scatter before the wind, and would secure loosened boards about the crib, close widening apertures, brace racked timbers, and otherwise fortify the rigidity of the structure against storms.

The courts have given expression to the fundamental conception of the vacancy clause in insurance policies just noted when expressed in different ways and applied to different states of facts.

"From the nature of the contract, whether it be divisible or not, we are constrained to infer that the existence of the condition had a potent influence in securing the assumption of the entire risk, for it is a matter of common knowledge that a farm with its dwelling and outbuildings constitutes a single establishment, generally remote from other habitations, and that the protection of the whole must, in a great measure, depend upon the occupants of the dwelling. Almost without exception, the outbuildings of a farm are clustered about a place of abode, and for that reason are deemed to be more secure than the occasional outlying barn or crib, which, because of its isolation, becomes the bane of its apprehensive owner. It seems to be impossible not to assume, in this case, that the proximity of the outbuildings to the dwelling influenced the insurer to enter into its contract

or contracts under the protection of the condition here questioned. It is natural and reasonable that it should be held to have intended that the continuance of the insurance upon all the subjects thereof was to depend upon the occupation of the dwelling.'' (*Hartshorne v. Agricultural Ins. Co.*, 50 N. J. L. 427, 431, 14 Atl. 615, 618.)

''A dwelling-house and barn are unoccupied, within the meaning of an insurance policy which provides that buildings unoccupied shall not be covered by the policy, where the house is only used by the insured and his servants for the purpose of taking their meals there when engaged in carrying on a contiguous farm, and the barn is only used for the purpose of storing hay and farming tools. . . . Occupancy as applied to such buildings implies an actual use of the house as a dwelling-place, and such use of the barn as is ordinarily incident to a barn belonging to an occupied house, or at least something more than a use of it for mere storage.'' (*Ashworth v. Builders' Insurance Company*, 112 Mass. 422, 424, 17 Am. Rep. 117.)

The principle is the same whether the danger be from fire or from wind.

''The condition cannot be disregarded when the contract is attempted to be enforced. The parties contracted that the building should not be permitted to be vacant or unoccupied. We cannot vary or depart from their contract. It may be, but the point we do not determine, that if the condition required the performance of acts which in no way affected the hazard, or the non-performance of which could work defendant no prejudice, the courts would not regard it. But it cannot be justly claimed that the hazard of 'high winds, cyclones or tornadoes' was not increased by the vacancy of the building. The occupants of a dwelling, for their own safety and the protection of the property they may have in it, will exercise care for the preservation of a building, by keeping closed and secured the windows and doors of the house during high winds, which would, to some

extent, secure to it increased stability and capacity of resistance to storms.'' (*Sexton v. Hawkeye Ins. Co.*, 69 Iowa, 99, 28 N. W. 462.)

In the same clause with the vacancy stipulation of the policy under consideration occurs a provision forbidding that ''the risk be increased   .   .   .   by any other means whatever.'' A like contract was interpreted in *Moore v. Insurance Co.*, 64 N. H. 140, 6 Atl. 27, 10 Am. St. Rep. 384, as follows:

''The meaning of the words 'vacant and unoccupied,' as used in the contract of insurance, is that which the parties intended to give them; and that intention is to be found from the whole instrument, the subject-matter of the contract, and the situation of the property insured. The object of the stipulation against vacancy and non-occupancy was to guard against the increased risk which arises from the absence of everybody whose duty or interest might afford some protection. In the same clause of the contract, 'increase of risk' from the mode of occupation and use of the premises, and 'increase of risk by any means whatever,' are mentioned as express grounds for avoiding the policy. 'If the buildings shall be occupied or used so as to increase the risk, or become vacant and unoccupied for a period of more than ten days, or the risk be increased by any means whatever,' is a statement in which the leading idea in the condition of forfeiture is 'increase of risk,' and that idea must have been intended as part of the definition of the words 'vacant and unoccupied.' It was the increase of risk from the loss of care and attention of persons otherwise present which the parties intended to guard against by the stipulation of forfeiture in case of vacancy and non-occupancy for more than ten days. They intended by the words 'vacant and unoccupied,' as used in the policy and in the connection in which they were used, such a desertion of the premises and removal from them as would materially increase the risk.''

From this it must be apparent that the risk intended

to be mitigated by the vacancy clause of the contract affected the double corn-crib with its stable addition as well as the dwelling-house itself. The case therefore presents many features analogous to those discussed in *Dohlantry and others v. The Blue Mounds Fire and Lightning Ins. Co.*, 83 Wis. 181, 53 N. W. 448, the syllabus of which reads:

"The insurance was distributed between the house and other buildings on the farm and their contents. *Held*, that as the continued absence of any occupant of the house might reasonably be presumed to increase the risk of loss of the other buildings, the policy was indivisible, and the company could not assert a forfeiture as to the house and its contents, and enforce it as a valid policy as to the other property, without the consent of the assured."

In the opinion of the court it was said:

"It requires no argument to show that in this case the continued absence of any occupant of the dwelling-house may reasonably be presumed to increase the risk of loss of the barns and granary, and the contents thereof, situated on the same farm, and presumably subject to the care and watchfulness of an occupant of the dwelling-house, which the contract calls for."

The subject of the divisibility of policies was given careful consideration by the supreme court of Wisconsin in the case of *Loomis v. The Rockford Ins. Co.*, 77 Wis. 87, 45 N. W. 813, 8 L. R. A. 834, 20 Am. St. Rep. 96. In that case the rules relating to the subject formulated by the supreme court of Vermont in the case of *McGowan v. Ins. Co.*, 54 Vt. 211, 41 Am. Rep. 843, were adopted. In doing so the Wisconsin court said:

"These rules are so reasonable and satisfactory that we feel justified in quoting somewhat at length from the opinion. The court says: 'This is a question of

great practical importance, as a large proportion of insurance contracts embrace more than one item of property insured.   The decisions are apparently conflicting, but, we think, are easily reconciled by referring to the plain principles which should govern them. The general rule, "void in part, void *in toto*," should apply to all cases where the contract is affected by some all-pervading vice, such as fraud or some unlawful act condemned by public policy or the common law ; cases where the contract is entire and not divisible ; and all those cases where the matter that renders the policy void in part, and the result of its being so rendered void, affects the risk of the insurer upon the other items of the contract.   Keeping these rules in mind, the leading cases upon this subject can all be reconciled.   A recovery should be had in all those cases where the contract is divisible, the different properties insured for separate sums, and the risk upon the property, which is claimed to be valid, unaffected by the cause that renders the policy void in part.'"

In the case of *Taylor v. Anchor Mut. Fire Ins. Co.*, 116 Iowa, 625, 88 N. W. 807, 57 L. R. A. 328, 93 Am. St. Rep. 261, decided in 1902, the supreme court of Iowa took a position much advanced beyond its earlier decisions, and after a careful review of its previous utterances and of the opinions of many other courts, it states the following conclusion :

" We therefore hold on this question, as involved in the case before us, that entirety of premium does not necessarily prove that the contract is indivisible, and that where it appears from the terms of the policy that distinct items or classes of property were separately insured the policy may be valid as to one item or class, although it is invalid as to another item or class by reason of breach of conditions of the policy with reference thereto, provided it appears, also, that the risk which it was intended to exclude by the condition which is broken does not apply to the other items or classes of property.   In this case a chattel mort-

gage on the cows and horses could not in any way affect the nature of the risk as to the dwelling-house and contents, and, therefore, we find that a breach of a condition in the policy as to the one class of property did not invalidate the insurance as to the other.''

The decisions of *Insurance Co. v. York*, 48 Kan. 488, 29 Pac. 586 ; *Insurance Co. v. Ward*, 50 id. 346, 31 Pac. 1079, and *Insurance Co. v. Saindon*, 53 id. 623, 36 Pac. 983, are virtually to the same effect, except that, as no occasion for so doing had presented itself, the qualification of the rule expressed in the Iowa, Wisconsin and Vermont cases was not noted ; therefore, although a policy of insurance so written as to place separate valuations upon separate subjects of insurance will ordinarily be severable, it will not be so unless it can be said that the risk intended to be excluded by a violated condition of the policy did not affect the item of property for the destruction of which a recovery is sought.   Although courts are diligent to prevent forfeitures, they may not entirely subvert the contracts of parties deliberately made, in an effort to do so.

The judgment of the trial court is reversed and the cause remanded.

All the Justices concurring.