### Noel A. BRINKER

### v.

### Louis O. GUIFFRIDA, Director of the Federal Emergency Management Agency, and the United States of America.

### Civ. A. No. 83–5502.

United States District Court, E.D. Pennsylvania.

Aug. 26, 1985.

---

Thomas A. Masterson, Jr., Philadelphia, Pa., for plaintiff.

Richard J. Stout, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

VANARTSDALEN, District Judge.

Plaintiff's Philadelphia residence was extensively damaged by fire on June 8, 1982. The Fire Marshal's report listed arson as the cause. Plaintiff's residence was insured by the Federal Insurance Administration under a Residential Crime Insurance Policy. Plaintiff sought recovery of the $5,000 policy limits. By letter dated November 10, 1982, plaintiff's claim was denied. Plaintiff thereafter filed this civil action.

Throughout the latter part of the decade commencing in 1960, many private insur-

ance companies either refused to provide or made it prohibitively expensiye for urban property owners to obtain real and personal property insurance. In response, Congress enacted the Housing and Urban Development Act of 1970, Pub.L. No. 91–609, 64 Stat. 1770 (1970). One of the purposes of the statute was "to provide an important new program of direct federal writing of essential property insurance if insurance rates in the private market exceed reasonable rates within the means of homeowners and small businesses." H.Rep. No. 1556, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 5582, 5582. The statutory provisions have been codified under 12 U.S.C. § 1749bbb to 1749bbb–21. The statute provides that when the Secretary of Housing and Urban Development (Secretary) determines that crime insurance is not available at affordable rates in a particular state, the Secretary may make such crime insurance available by providing insurance policies directly from the federal government, in accordance with such terms and conditions as the Secretary shall determine. 12 U.S.C. § 1749bbb–10a. "Crime insurance" is defined by statute as insurance against losses resulting from "robbery, burglary, larceny *and similar crimes.*" 12 U.S.C. § 1749bbb–2 (emphasis added).

Plaintiff, Noel A. Brinker, applied for and was issued a Residential Crime Insurance Policy by the Federal Insurance Administration for plaintiff's residence at 449 West Price Street, Philadelphia, Pennsylvania.[1] That policy provided in part as follows:

INSURING AGREEMENTS—

I. Loss by Burglary and Larceny or Robbery, Including Observed Theft

To pay for loss by burglary and larceny incident thereto, or robbery, including observed theft, of all personal property from the premises or in the presence of an insured.

---

1. Neither party has provided the court with a copy of the policy as written. A form "sample copy" has been provided that both parties agree is identical to the form of the policy issued to plaintiff.

II. Damage

To pay for damage to the premises and to the insured property by burglary or larceny incident thereto or robbery, including observed theft, or attempt threat [sic], and for damage to the interior of that portion of any building occupied by the named insured's household at the premises and to the insured property therein or away from the premises *by vandalism or malicious mischief which occurs during a burglary or robbery,* provided that with respect to damage to the building an insured is the owner thereof or is liable for such damage.

With respect to loss occurring at any part of the premises not occupied exclusively by the named insured's household, this insuring agreement applies only to property owned or used by an insured. (emphasis added).

The applicable regulations set forth in full the precise form for residential crime insurance policies. 44 C.F.R. § 835. The regulations in effect at the time of the issuance of the policy and the time of the alleged loss provided under the "Insuring Agreements" in pertinent part as follows:

11. Damage. To pay for damage to the premises and to the insured property by burglary and larceny incident thereto, or robbery, including observed theft, or attempt threat [sic], and for damage to the interior of that portion of any building occupied by the named insured's household at the premises and to the insured property therein or away from the premises by vandalism or malicious mischief: Provided that with respect to damage to the building an insured is the owner thereof or is liable for such damage.

Defendants, in their reply brief, concede that the federal regulations in effect in June 1982, the time in question here, did not require that vandalism or malicious mischief occur during a burglary or robbery in order for coverage to inure. (Defendants' reply brief at 1).

Under the "Definitions" portion of the policy, "Burglary" is defined as follows:

"Burglary" or "burglary and larceny incident thereto" means the felonious abstraction of insured property from within the premises by a person making a felonious entry therein by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry.

On June 8, 1982, while plaintiff was at work, the second and third floors of the insured residence were extensively damaged by fire. The Fire Marshal's report concluded that the fire was caused by arson committed by an unknown person or persons. Plaintiff timely filed a claim under his Residential Crime Insurance Policy. In the statement of claim, he asserted: "[T]his appears to be a case of burglary and then to cover up the burglary the unknown(s) started the fire."

By letter dated November 10, 1982, a senior claims examiner for the Federal Crime Insurance Program denied plaintiff's claim. The letter cited two reasons for disallowing the claim. One of the reasons given was apparently a mistake and the defendants concede as much.[2] The other was that "[plaintiff] said in [his] statement given on August 24, 1982 that 'it was never determined by either myself or the fire department how the unknown may have gotten into the premises.'" Although not articulated in the letter, the significance of plaintiff's statement to the denial of his claim is contained in the "Conditions" portion of the policy, containing definitions of terms.

"Burglary" or "burglary and larceny incident thereto" means the felonious abstraction of insured property from within

---

2. The letter stated: "We call your attention to the Exclusion (d) in the policy which states: 'This policy does not apply under insuring agreements V and VI, to loss occurring during a fire on the premises.'" A review of the sample copy of the policy and the Code of Federal Regulations reveals that no language similar to that quoted in the letter is contained therein. A call to the Assistant United States Attorney handling the case was made and counsel informed my law clerk that the quoted language is from a commercial policy, not a residential policy, *see* 41 C.F.R. § 83.26 (1984) and was mistakenly referred to by the claims examiner.

the premises *by a person making felonious entry therein by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry.* (emphasis added).

Evidently, the claims examiner believed that plaintiff's statement was a concession that no burglary, as defined in the policy, took place because there were no visible marks of entry. Plaintiff thereafter filed this action, invoking the exclusive jurisdiction vested in the district courts by virtue of 12 U.S.C. § 1749bbb–11.

Plaintiff's original complaint sought recovery under the policy for "losses from burglary, larceny and robbery." With leave of court, plaintiff subsequently filed an amended complaint that sought recovery under the policy for "losses from burglary, larceny, robbery, vandalism and/or malicious mischief." The parties have filed cross-motions for summary judgment and agree that there are no issues of disputed fact that would prevent the court from determining the legal significance of the undisputed facts.

Defendants, in their motion for summary judgment, contend that the policy issued to plaintiff "clearly and unambiguously predicates coverage for burglaries of residences upon forced entry, evidenced by visible marks on the exterior of the premises." (Defendants' memorandum at 4). Defendants conclude that because plaintiff has not and cannot establish visible marks of forced entry, plaintiff cannot recover under the terms and conditions of the policy. Moreover, defendants assert alternatively that even if there is coverage, it is limited to $550.00. Defendants contend plaintiff filed a claim only for loss of personal property, specifically cash and jewelry. The policy limits recovery for cash to $100 and jewelry to $500 per occurrence. The policy also has a deductible figure of $50.00, which subtracted from the $600.00, leaves a balance of $550.00.

Plaintiff, in response to defendants' motion and in the cross-motion for summary judgment, asserts that the policy at issue provides for recovery of loss due to vandalism or malicious mischief in addition to recovery for loss due to burglary. Further, plaintiff claims that recovery for damage caused by vandalism or malicious mischief does not depend upon evidence of visible marks upon the exterior of the premises, as is the case with recovery for loss due to burglary. In addition, the plaintiff contends that his claim is not solely for the items of cash and jewelry allegedly stolen, but also for the extensive damage done to the residence itself as a result of the fire.

After reviewing the memoranda in support of the cross-motions and all relevant statutes and caselaw, for the reasons that follow, I find plaintiff's position to be the correct interpretation of the policy.

■ Pursuant to his authority, the Secretary, through delegation to the Federal Insurance Administrator (Administrator), has established regulations governing the crime insurance program. *See* 44 C.F.R. § 80.1 to 83.26 (1984). As previously noted, the regulations set forth the form and contents of the Residential Crime Insurance Policy that *must* be used. 44 C.F.R. § 83.5 (1984). The policy required to be used at the time plaintiff's policy was in effect was set forth in the 1982 Code of Federal Regulations. *See* 44 C.F.R. § 83.5 (1982) (superseded). Coverage under the regulations was:

> To pay for damage to the premises and to the insured property by burglary and larceny incident thereto, or robbery, including observed theft, or attempt threat [sic] *and for damage to the interior of that portion of any building occupied by the named insured's household at the premises and to the insured property therein or away from the premises by vandalism or malicious mischief:* Provided, that with respect to damage to the building an insured is the owner thereof or is liable for such damage.

44 C.F.R. § 83.5(a) (1982) (superseded).

In the "Conditions" section of the policy, the definition for "Burglary" is given as:

"Burglary" or "burglary and larceny incident thereto" means the felonious abstraction of insured property from within the premises by a person making felonious entry therein by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry.

*Id.* There are no definitions provided for "vandalism" or "malicious mischief." A plain reading of the policy as a whole reveals that unlike "burglary" or "burglary and larceny incident thereto," in order to recover for loss due to "vandalism" or "malicious mischief," an insured need not establish evidence of "visible marks upon or physical damage to, the exterior of the premises at the place of such entry." Because the Administrator's regulations clearly require such evidence to recover for a claim of loss due to burglary, and no such requirement is set out for claims of loss due to vandalism or malicious mischief, I can only conclude that no such evidence is required in the latter situations.

Further support for the adoption of plaintiff's contention that the 1982 regulations controlling the Residential Crime Insurance Policy did not require evidence of visible entry for vandalism and malicious mischief can be found in a subsequent amendment to the regulations. On April 29, 1983, the regulations were amended to provide, inter alia, that the Federal Insurance Administration agreed:

To pay for damage to the premises and to the insured property by burglary or robbery, including observed theft, or attempt threat [sic], and for damage to the interior of that portion of any building occupied by the named insured's household at the premises and to the insured property therein or away from the premises by vandalism or malicious mischief which occurs during a burglary or robbery, provided that with respect to damage to the building an insured is the owner thereof or is liable for repairing such damage.

With respect to loss occurring at any part of the premises not occupied exclusively by the named insured's household, this Insuring Agreement applies only to property owned or used by an insured. 48 Fed.Reg. 19371 (1983) (emphasis added).[3] The underlined language above leaves no doubt that after April 29, 1983, recovery for vandalism and malicious mischief is only allowed when such acts occur during a burglary. As such, recovery for damage due to malicious mischief or vandalism is presently tied to proving a burglary occurred, which in turn requires proof of "a person making felonious entry therein by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry." The 1983 amendment supports a determination that, as of June 8, 1982, recovery for loss due to vandalism or malicious mischief did not depend on such acts occurring during a burglary. Thus, the requirements for establishing a burglary are irrelevant in determining whether plaintiff may recover for losses due to vandalism or malicious mischief.

■ Defendants contend that damage to property resulting from arson is not covered by the residential crime insurance policy. Congress, in defining "crime insurance" in the Act, provided:

"[C]rime insurance" means insurance against losses resulting from robbery, burglary, larceny and similar crimes, and may include ...; the term does not include automobile insurance or losses resulting from embezzlement.

12 U.S.C. § 1749bbb-2. It is obvious that when Congress wanted to exclude some-

3. The record does not disclose why the sample form of the policy, which the parties agree was the form of policy issued to plaintiff, contained the language of the 1983 amendment to the regulations, even though the regulations in effect at the time the policy was written mandated wording that did not include that vandalism and malicious mischief occur during a burglary or robbery in order for coverage to issue. In any event, defendant concedes vandalism and malicious mischief damage would be covered even if there was no burglary or robbery or evidence of visible marks of entry.

thing from coverage it knew how to do so. Automobile insurance and embezzlement were expressly excluded from coverage in the crime insurance program. Losses resulting from fire were not excluded. Moreover, vandalism, malicious mischief and arson can be considered "similar crime[s]" to robbery, burglary and larceny for the broad purposes of the federal crime insurance program and were specifically referred to in the Act's legislative history.

The Administrator, who was given authority to establish regulations to set up the crime insurance program, likewise did not exclude from coverage losses due to fire. The Administrator certainly knew how to do so because in 1982 one of the exclusions in a Commercial Crime Insurance Policy was "loss occurring during a fire in the premises." 44 C.F.R. § 83.26 (1982) (superseded). No such exclusion was included in a Residential Crime Insurance Policy. *See* 44 C.F.R. § 83.5 (1982) (superseded). The absence of such a provision in the residential policy supports the conclusion that losses due to fire are covered by a Residential Crime Insurance Policy if the fire loss was a result of vandalism or malicious mischief.

The Residential Crime Insurance Policy does not specifically exclude losses due to fire. I conclude that a fire caused by arson is within the coverage of the policy for loss due to "vandalism or malicious mischief." A policy that provides for recovery of losses due to "vandalism or malicious mischief" encompasses losses from a fire determined to be arson. Intentionally setting fire to another's dwelling is an act of both vandalism and malicious mischief, albeit an extreme one.

Vandalism at common law has been defined as the willful or malicious destruction or defacement of things of beauty or of public or private property. It includes both personal property and real property. Arson, under a broadened common-law definition, includes the willful and malicious burning or attempt to burn any building, structure or property of another or of one's own, with criminal or fraudulent intent. It is clear that arson is a type of vandalism, *i.e.*, the willful or malicious destruction or defacement of property by burning.[4]

The basic issue in this case is whether a policy of insurance entitled "Residential Crime Insurance Policy", which expressly covers property damage caused by vandalism and malicious mischief (both of which are undefined), includes coverage for damage caused by arson. Arson is neither expressly included nor excluded under the policy. As stated previously, early common-law arson was generally defined as the willful and malicious burning of a dwelling house of another. Vandalism and malicious mischief are frequently defined as the wanton and malicious injury or destruction of the property of another. A specific intent to physically injure or destroy property is required. Vandalism and malicious mischief include both real and personal property. At common-law, arson involved only real estate. Damage to a dwelling caused by arson would appear to have all of the elements required of vandalism and malicious mischief causing injury to real estate.[5]

In this case, the insurer is an agency of the United States. The form of policy was

---

**4.** Although defendants in their motion suggest that plaintiff himself or members of his family could not be ruled out as starting the fire, the defendants have never pressed the point. It is elementary under the exclusions provision of the policy that plaintiff could not recover for a fire set, or arranged to be set, by him. The defendants have never asserted that exclusion as a basis for denying plaintiff's claim, and there is absolutely no evidence of arson by or at the behest of the insured, whose losses greatly exceeded all insurance coverage, including the policy at issue.

**5.** The case cited by the defendants—*Commonwealth v. Williams*, 298 Pa.Super. 466, 444 A.2d 1278 (1982) is of no significance. The question there presented was whether, under the Pennsylvania statutory offense of "criminal mischief," such offense was a lesser included offense of statutory arson. The criminal mischief statute expressly included negligent as well as intentional conduct.

prepared by the Administrator pursuant to requirements of adopted regulations. Nevertheless, for purposes of construing the contract of insurance, the government should be treated the same as a private insurer. *Sydor v. Harris,* 480 F.Supp. 804 (E.D.N.Y.1979). If a policy is ambiguous, the general rule is to construe the policy in favor of coverage, if by a reasonable interpretation such may be found and there is no express provision excluding such coverage. The present policy does not exclude arson. Willfully and intentionally damaging a dwelling by setting it on fire is certainly damaging the dwelling by vandalism and malicious mischief, as well as arson.

Defendants argue that the policy is a crime insurance policy—not a fire policy. (Defendants' reply brief at 3). Most assuredly, it is a crime insurance policy. An intentionally set fire—arson—nevertheless remains a criminal act. The policy was intended to protect against criminal acts that intentionally cause damage to insured property.

If a rock, which broke or damaged some parts of the building or personal property in the building, was intentionally thrown through a window of the dwelling house, clearly the malicious mischief and vandalism clause would cover such damage. If, in place of the rock, a fire bomb was thrown through the same window and the same damage was caused, except that the ensuing fire rather than the force of the rock was the immediate cause of the damage, there is no logical reason why the malicious mischief and vandalism clause would not cover such damage, merely because the criminal act also amounted to arson. If, by criminal act, the dwelling house was intentionally set on fire, ignited either from within or outside of the house, the damage caused by the fire would also be covered under the policy.

Defendants' contention that plaintiff is limited to $550 under the policy also must be rejected. First, and most important, the policy does not so limit claims for loss due to vandalism and malicious mischief. The policy quite clearly allows recovery under such circumstances "for damage to the interior portion of any building occupied by the named insured's household at the premises and the insured property therein or away from the premises...." Second, although defendants suggest that plaintiff limited his claim to the cash and jewelry allegedly stolen, plaintiff did not do so. In his statement of claim, plaintiff did focus on $300 cash that may have been stolen or burned in the fire and a number of valuable items of jewelry that were missing. Nevertheless, plaintiff stated that "[m]ost of our loss was due to the fire."

■ Plaintiff has presented documentation establishing his total loss to be approximately $200,000, including the damage to the dwelling house itself and the items of personal property that were in the dwelling house. Plaintiff recovered approximately $50,000 on a personal homeowner's policy. The net loss remaining is approximately $150,000; well in excess of the $5,000 federal crime insurance policy limit.[6] Defendant does not dispute these figures. The actual loss is well in excess of the limits of the policy. Defendant is liable for the full amount of the policy of $5,000. The $50 deductible amount applies only if the actual loss is $5,050 or less. Where the actual loss exceeds the limits of the policy, plus the deductible amount, the full limit of the policy is payable. *See* paragraph 3 of "Conditions"—"Limits of Liability," 44 C.F.R. § 83.3 (1984).

---

6. The "other insurance" provision of the policy provides that the federal crime insurance policy shall be excess insurance over any other insurance carried on the property.