Monte ESTES, Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.

Civil Action No. 98–2360–KHV.

United States District Court, D. Kansas.

April 6, 1999.

William F. Dunn, Kansas City, KS, for plaintiff.

David R. Buchanan, Brown & James, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on *Defendant St. Paul Fire And Marine Insurance Company's Motion For Summary Judgment* (Doc. # 12) filed November 25, 1998. After carefully considering the parties' briefs, the Court is prepared to rule. For the reasons set forth below, defendant's motion is sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Factual Background

The following facts are uncontroverted, deemed admitted, or where controverted, viewed in the light most favorable to plaintiff.

Plaintiff Monte Estes entered into an insurance agreement with St. Paul Fire and Marine Insurance Company ("St. Paul") for the period from January 23, 1996 through January 23, 1997. The policy insured plaintiffs two houses in Kansas City, Kansas—one on 17th Street and the other on Parallel. At the time plaintiff procured the policy, he resided at the Parallel house and rented the 17th Street house. The policy referred to the 17th Street house as a rental property.

In December 1995, the City of Kansas City, Kansas notified plaintiff that the 17th Street house was "unfit for human habitation." Shortly thereafter, plaintiff notified his tenants that they must move. The house was unoccupied from December 19, 1995 through July 28, 1996. During this time, plaintiff and his wife attempted to

complete repairs demanded by the City. On or about July 28, 1996, an unknown arsonist and/or vandal intentionally set fire to the house. At the time of the fire, plaintiff and his wife had not completed the repair work. In particular, they had not changed the electric service from 60 amp to 100 amp.

Plaintiff made claim under the policy for $72,170.78. Defendant denied coverage, relying on a policy exclusion which states that "PAK II covers your home for vandalism and glass breakage as long as you haven't left it vacant for thirty days or more."

### Analysis

Defendant maintains that it is entitled to summary judgment because the policy unambiguously excludes coverage for plaintiff's loss. As noted above, the policy has a vandalism exclusion which states that: "PAK II covers your home for vandalism and glass breakage as long as you haven't left it vacant for thirty days or more." To resolve the instant motion, the Court must decide two insurance policy interpretation questions: (1) whether arson is included in the "vandalism" exclusion, and (2) whether the premises were "vacant" at the time of plaintiff's loss.

■ Initially, the Court notes the general principles of insurance policy interpretation. The interpretation of an insurance policy, like other contracts, is a question of law. *See AMCO Ins. Co. v. Beck,* 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Disputed terms in an insurance policy generally are given their plain and ordinary meaning unless the parties have expressed a contrary intent. *See Pink Cadillac Bar & Grill, Inc. v. United States Fidelity & Guar. Co.,* 22 Kan.App.2d 944, 948, 925 P.2d 452, 456 (1996). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bur. Mut. Ins. Co., Inc. v. Winters,* 248 Kan. 295, 300, 806 P.2d 993, 996 (1991). If the

policy is not ambiguous, the Court must enforce it as written. *See American Media, Inc. v. Home Indem. Co.,* 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983). If the Court determines that certain policy language is ambiguous, then it must determine the meaning by applying certain rules of construction. These rules do not apply here because the Court finds no ambiguity in the disputed policy terms.

■ Applying these rules, the Court finds that in referring to "vandalism," the policy exclusion includes arson. Plaintiff argues that "vandalism" does not include arson because the crime of arson requires the additional element of burning. Plaintiff has cited no authority for excluding the burning of property from the definition of vandalism. Vandalism is commonly defined as "the willful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New Int'l Dictionary (1986) at 2532. On the other hand, arson is defined as "the willful malicious burning of or attempt to burn any building, structure or property of another (as a house, a church, or a boat) or of one's own usu. with criminal or fraudulent intent." *Id.* at 122. Arson of a private dwelling clearly is within the plain and ordinary meaning of vandalism. *See Potomac Ins. Co. v. NCUA,* No. 96 C 1044, 1996 WL 396100, at *4 (N.D.Ill. July 12, 1996) (ordinary meaning of "vandalism" includes arson); *American Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) (common sense definition of "vandalism or malicious mischief" includes a fire set by an unknown arsonist or vandal); *Brinker v. Guiffrida,* 629 F.Supp. 130, 135 (E.D.Pa.1985) (arson is a type of vandalism). Here, the parties agree that plaintiff's loss was caused by a fire that "was intentionally set by an unknown arsonist and/or vandal." Thus, the vandalism exclusion applies.

Next, we analyze the meaning of the term "vacant" in the policy exclusion. Defendant argues that this term, when used in reference to a dwelling or rental unit, is

defined as "not occupied" or "not lived in." Plaintiff argues that "vacant" should be defined as being both unoccupied *and* devoid of household goods or contents of substantial value. The Kansas Supreme Court has declined to specifically define the term but it has noted that a house may be vacant even if it is not completely empty of everything but air. *See Robinson v. Mennonite Mut. Fire Ins. Co.,* 91 Kan. 850, 855, 139 P. 420, 422 (1914). The Kansas Supreme Court emphasizes that the term "vacant" within a policy exclusion should be construed in light of the purpose of the exclusion, *i.e.* to ensure the protection of a guardian of the premises. *See id.; Republic County Mut. Fire Ins. Co. v. Johnson,* 69 Kan. 146, 148–49, 76 P. 419, 420 (1904). In *Robinson,* the policyholder satisfied the purpose of the vacancy exclusion because he occupied the premises "for substantially all the purposes of a dwelling place except that sleeping there at night was deferred and meals were eaten there only occasionally." 91 Kan. at 855, 139 P. at 422. In *Republic County,* however, the policyholder did not satisfy this purpose because he merely farmed the land, apparently did not use the dwelling, and used the corn crib on the land only for storage of unused farming implements. 69 Kan. at 147–50, 76 P. at 419–20.

■ In the context of a dwelling and an insurance policy exclusion for vandalism, the plain and ordinary meaning of "vacant" is that the structure is not lived in and lacks the basic amenities for human habitation. *See* Webster's Third New Int'l Dictionary (1986) at 2527 ("vacant" in context of dwelling is "premises which are not lived in and from which the furniture and fixtures have been removed"); In re Estate of Hix, No. 89,821, 1998 WL 395065, at *2 (Okla.Ct.App. July 16, 1998) (ordinary and popular meaning of "vacant" includes rental house without tenants); *Government Employees Ins. Co. v. Medley,* No. Civ.A. 96–0964–R, 1998 WL 320392, at *3 (W.D.Va. Jan.14, 1998) (rental property was "vacant" where no tenants lived at property, property was condemned, utilities were disconnected, and trash was

strewn about property), *aff'd,* 149 F.3d 1168 (4th Cir.1998); *Durrence,* 872 F.2d at 379 (house is "vacant" if it lacks amenities minimally necessary for human habitation). *But see Alcock v. Farmers Mut. Fire Ins. Co.,* 591 S.W.2d 126, 128 (Mo.Ct.App.1979) (vacant means empty, without inanimate objects); *National Sec. Fire & Cas. Co. v. James,* 358 So.2d 737 (Ala.Civ.App.1978) (same). A reasonably prudent policyholder would have so understood the term "vacant" in light of the surrounding vandalism exclusion, which clearly addressed the increased risk of vandalism in dwellings that were unoccupied or not otherwise under the protection of a guardian.

■ Here, plaintiff concedes that his house on 17th Street was unoccupied for seven months before the fire. He argues, however, that the home was filled with items of personal property. The use of a dwelling for limited storage purposes, however, does not establish that the dwelling was not vacant. *See Republic County,* 69 Kan. at 147–50, 76 P. at 419–20; H*ix,* 1998 WL 395065, at *2; *Durrence,* 872 F.2d at 378–79; *Dunton v. Connecticut Fire Ins. Co.,* 371 F.2d 329, 330 (7th Cir.1967); *Frazier v. State Farm Fire & Cas. Co.,* 957 F.Supp. 816, 818 (W.D.Va.1997). Plaintiff has not shown that the house had the minimal amenities necessary for human habitation. Indeed, the City of Kansas City, Kansas had notified plaintiff in December 1995 that the house "was unfit for human habitation." *See* Exam. Under Oath of Monte Estes, Exh. B. to *Defendant St. Paul Fire And Marine Insurance Company's Memorandum In Support Of Its Motion For Summary Judgment* (Doc. # 12) filed Nov. 25, 1998, at 83–85. At the time of the fire in July 1996, plaintiff had not completed the repairs which the City demanded. *See id.* at 86, 90–92. In particular, plaintiff had not changed the electric service in the house from 60 amp to 100 amp, which was a major repair item. *See id.* at 88, 90, 92. Plaintiff also contends that the house was not vacant because he was repairing and remodeling the

premises. Plaintiff has not shown that his repair efforts were of such frequency to establish that the dwelling "fell under the protection of a guardian." *See Robinson,* 91 Kan. at 855, 139 P. at 422; *Republic County,* 69 Kan. at 148–49, 76 P. at 420; *see also Hix,* 1998 WL 395065, at *1–2 (house was vacant despite owner's remodeling efforts); *Will Realty Corp. v. Transportation Ins. Co.,* 22 Mass.App.Ct. 918, 492 N.E.2d 372, 373 (1986) (premises may be vacant despite sporadic entry by workers). Finally, the Court notes that both plaintiff and his wife described the house as "vacant" during the pertinent time period. *See* Sworn Statement in Proof of Loss, Exh. D to *Defendant St. Paul Fire And Marine Insurance Company's Memorandum In Support Of Its Motion For Summary Judgment* (Doc. # 12) filed Nov. 25, 1998 at 1 (property "became vacant"); Exam. Under Oath of Patricia L. Estes, Exh. B. to *Defendant St. Paul Fire And Marine Insurance Company's Memorandum In Support Of Its Motion For Summary Judgment* (Doc. # 12) filed Nov. 25, 1998, at 36. For these reasons, the Court finds that plaintiff's house had been vacant for more than 30 days prior to the fire on July 28, 1996. Pursuant to the vandalism exclusion in the policy, plaintiff did not have coverage for his loss.

**IT IS THEREFORE ORDERED** that *Defendant St. Paul Fire And Marine Insurance Company's Motion For Summary Judgment* (Doc. # 12) filed November 25, 1998 be and hereby is **SUSTAINED.**