No. 86,707

STEVEN L. SPETH, Executor of the Estate of Gertrude Swesh, Deceased, *Appellant,* v. STATE FARM FIRE & CASUALTY COMPANY, *Appellee.*

(35 P.3d 860)

Opinion filed December 7, 2001.

*Timothy J. King,* of Speth & King, of Wichita, argued the cause and was on the brief for appellant.

*Tristram E. Felix,* of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Wichita, argued the cause, and *Alan E. Streit,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This appeal arises out of State Farm Fire & Casualty Company's (State Farm) denial of coverage on a homeowner's policy for physical damage sustained to the insured's home due to vandalism. Coverage was denied by State Farm under a policy exclusion for vandalism losses that occur when a house has remained "vacant" for more than 30 consecutive days. Plaintiff Steven Speth, Executor of the Estate of Gertrude Swesh, alleged that the term "vacant" was ambiguous and that State Farm improperly denied coverage for the insured's vandalism loss. The district court applied the vandalism exclusion and granted State Farm's motion for summary judgment.

The question is whether the district court erred in finding that the word "vacant" in the State Farm policy was unambiguous and that the policy exclusion applied.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on our own motion).

Finding no error, we affirm.

## FACTS

The facts were stipulated. The key issue was submitted to the district court on cross-summary judgment motions. Gertrude Swesh's home was insured by State Farm. In the fall of 1998, Swesh was diagnosed with terminal cancer, and in early November 1998, she moved into a nursing care center. She died on May 3, 1999. Steven Speth was appointed the Executor of Swesh's estate.

On or about September 16, 1999, the Swesh home was vandalized. At the time of the vandalism: (1) an alarm system was in place and operable, but had been turned off so that the home could be shown by realtors, (2) the home was empty of all contents except a stove and a refrigerator for more than 30 consecutive days, and (3) the home was serviced by water, gas, and electric utilities.

Speth filed a vandalism loss claim with State Farm. State Farm, relying on the exclusion, denied coverage. The homeowner's policy excluded coverage for vandalism losses when a house has been "vacant" for more than 30 consecutive days. The policy did not contain a definition of "vacant."

The district court found that the term "vacant" was not ambiguous. It also found that "the Swesh house was *not* occupied for substantially all the purposes of a dwelling place" and concluded that the house was vacant as that term is understood in its plain and ordinary usage. Thus, the vandalism claim was excluded from coverage because the home had been vacant for more than 30 consecutive days before the vandalism occurred.

## DISCUSSION

The resolution of this case presents a question of law requiring our interpretation of the State Farm policy. See *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994). Speth, as executor, argues

that the district court erred by finding, as a matter of law, the term "vacant" was unambiguous and that the policy exclusion applied to the vandalism loss. We disagree.

The burden of proving the application of the exclusionary clause falls upon State Farm. *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 335, 681 P.2d 15 (1984). Here, the exclusionary clause said, in pertinent part:

"1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . . .

e. vandalism or malicious mischief or breakage of glass and safety glazing materials *if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.* A dwelling being constructed is not considered vacant." (Emphasis added.)

Speth contends that the term "vacant" is ambiguous because it was not defined in the policy. However, under Kansas law, "the fact that an insurance policy does not define each term within it does not somehow make an undefined term ambiguous; ambiguity arises only if [the] language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain." *Harman v. Safeco Ins. Co. of America*, 24 Kan. App. 2d 810, 816, 954 P.2d 7 (1998). Thus, the absence of a definition does not necessarily render the word "vacant" ambiguous.

State Farm advanced the opinion of Daniel J. Sevart, a Wichita attorney, on the meaning of "vacant." Without support, Speth argues that Sevart's report shows that the policy was ambiguous. The Sevart report said, in part:

"The policy provides no definition of 'vacant,' and thus we look to the common definition of the term. Webster's New Collegiate Dictionary, at p. 1290 (G. & C. Merriam Company, 1977), defines 'vacant,' so far as pertinent here, 'as being without content or occupant,' and refers to the term 'ABANDONED' in reference to 'a [vacant] estate,' and for synonym states 'see EMPTY.' Thus, from the common dictionary definition, it is clear that a house which remains furnished, although unoccupied by a living person, is not 'vacant.' . . . We accordingly have no difficulty in concluding that the house in question became 'vacant' when the furniture was

removed in July of 1999, and not when Ms. Swesh was moved to the Masonic Home."

Although the district court expressed concern from its review of the Sevart report, it found that there was no evidence that the property was "forlorn" or "abandoned"; rather, it found that the house was being cared for by the executor to the extent that it had utilities and was available for real estate agents to show.

Speth turns to Kansas case law to advance his contention that Kansas courts have applied various meanings to the term "vacant." We disagree with the "ambiguity" conclusion Speth reaches from a reading of our cases.

We next take up a review of those cases. In *Robinson v. Insurance Co.*, 91 Kan. 850, 139 Pac. 420 (1914), a fire insurance policy contained a provision that excluded coverage if the insured building became and remained "vacant" for 30 days, unless notice was given and a vacancy permit was issued. We applied the reasoning that the policy contemplated "the protection of a guardian of the premises, some individual in charge of them who would exercise a preserving superintendency over them." 91 Kan. at 854. The subject properties in *Robinson*, a dwelling house and a barn, contained a pile of clothing, a sofa, a baby carriage, a stove, two beds without mattresses, some feed, and one or more horses. We found that the house and barn were not vacant. The policyholder satisfied the purpose of the vacancy exclusion because he occupied the premises "for substantially all the purposes of a dwelling place except that sleeping there at night was deferred and meals were eaten there only occasionally." 91 Kan. at 855.

In *Insurance Co. v. Johnson*, 69 Kan. 146, 76 Pac. 419 (1904), an insurance policy against loss by fire, lightning, tornado, and windstorm covered a dwelling house, a double corncrib with a stable addition, and hay and grain. The policy contained a provision that it would become void "if the above-mentioned premises . . . become vacant for thirty days." 69 Kan. at 147. At the date of the policy, the house was occupied as a dwelling by a tenant of the land. Later, the tenant moved away, and the owner farmed the land from his own residence on an adjoining tract. During that

time, the double corncrib was used to house unused farming implements. More than 30 days after the removal of the tenant from the house, a windstorm destroyed the double corncrib.

In determining whether the premises were vacant within the meaning of the insurance provision, this court quoted from *Moore v. Insurance Co.*, 64 N.H. 140, 142, 6 A. 27 (1886):

> " 'The meaning of the words "vacant and unoccupied," as used in the contract of insurance, is that which the parties intended to give them; and that intention is to be found from the whole instrument, the subject-matter of the contract, and the situation of the property insured. The object of the stipulation against vacancy and non-occupancy was to guard against the increased risk which arises from the absence of everybody whose duty or interest might afford some protection.' " 69 Kan. at 151.

Speth also cites *Estes v. St. Paul Fire & Marine Ins. Co.*, 45 F. Supp. 2d 1227 (D. Kan. 1999). In *Estes*, Judge Vratil found a house to be "vacant" for purposes of a homeowner's policy exclusion for vandalism. The house in question was referred to in the policy as rental property. The City of Kansas City, Kansas notified the owner that the house was unfit for human habitation, and the owner notified the tenants that they had to move.

The house was unoccupied for about 7 months. During that period, the owner attempted to complete the repairs demanded by the City. Then, the house was vandalized. The repair work was not complete at the time. The insurance company denied coverage, relying on a policy exclusion that said that vandalism and glass breakage was covered "as long as you haven't left [the house] vacant for thirty days or more." 45 F. Supp. 2d at 1229. *Estes* found no ambiguity in the disputed policy terms, commenting: "In the context of a dwelling and an insurance policy exclusion for vandalism, the plain and ordinary meaning of 'vacant' is that the structure is not lived in and lacks the basic amenities for human habitation." 45 F. Supp. 2d at 1230 (citing Webster's Third New Int'l Dictionary [1986] at 2527 [" 'vacant' in context of dwelling is 'premises which are not lived in and from which the furniture and fixtures have been removed' "]). *Estes* concluded that a reasonably prudent policyholder would have understood the term "vacant" in light of the surrounding vandalism exclusion, "which clearly ad-

dressed the increased risk of vandalism in dwellings that were unoccupied" or not otherwise protected. 45 F. Supp. 2d at 1230. We agree with the *Estes* analysis. See *Brumley v. Lee*, 265 Kan. 810, 813, 963 P.2d 1224 (1998), where we stated that the test for ambiguity in an insurance policy is what a reasonably prudent insured would understand the language to mean, not what the insurer intends the language to mean; *Associated Wholesale Grocers, Inc., v. Americold Corp.*, 261 Kan. 806, Syl. ¶ 2, 934 P.2d 65 (1997).

Other jurisdictions have addressed issues involving similar exclusionary provisions containing the term "vacant." See *Jelin v. Home Ins. Co.*, 5 F. Supp. 908, 909 (D. N.J.), *aff'd* 72 F.2d 326 (3d Cir. 1934) ("a vacant house is one empty of human beings"); *Kent v. Farm Bur. Mut. Ins. Co.*, 127 Idaho 776, 779, 906 P.2d 146 (1995) (finding that "[t]he house was vacant, according to the plain meaning of that term, when the pipe froze"); *Thompson v. Green Garden Mutual Ins. Co.*, 261 Ill. App. 3d 286, 291, 633 N.E.2d 1327 (1994) ("The term 'vacant' has been defined as meaning generally empty or deprived of contents."); *Rainwater v. Maryland Cas. Co. of Baltimore*, 252 S.C. 370, 374-75, 166 S.E. 2d 546 (1969) (finding that the actual use of building outside of the vacancy or unoccupancy exclusion of a fire policy was established by showing that the building had not been deprived of the contents or abandoned and that there was no absence of human beings); *Jerry v. Kentucky Cent. Ins. Co.*, 836 S.W. 2d 812, 815 (Tex. App. 1992) ("The term 'vacant' means entire abandonment, deprived of contents, empty, that is, without contents of substantial utility."). But see *Rumpza v. Donalar Enterprises, Inc.*, 581 N.W. 2d 517, 520-21 (S.D. 1998) (finding exclusionary provision was ambiguous where the policy did not provide a method for determining vacancy or reveal how an insured seeking coverage would know he was paying premiums for vacant property); *Smith v. Lumbermen's Mut. Ins. & Co.*, 101 Mich. App. 78, 82-83, 86, 300 N.W. 2d 457 (1980) (finding policy provision was ambiguous and that the house being sold on a land contract was not "vacant or unoccupied" where the seller had moved out and the buyers were to take possession).

Here, the Swesh house was not lived in and lacked furniture and other amenities for human habitation. There is no question that

the house was not occupied for substantially all the purposes of a dwelling place. As the district court found, there was no evidence that anyone regularly visited the house or that the executor conducted on-site supervision of the premises. A reasonable person walking up to the house and looking through a window would conclude that it was "vacant" as that term is understood in its plain and ordinary usage.

The district court correctly found that the term "vacant" was not ambiguous and that Speth's claim as executor was excluded from coverage under the policy's exclusionary clause.

Affirmed.