Catherine COSTABILE and
Peter Costabile

v.

**METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**

**No. 3:99CV2470(AHN).**

United States District Court,
D. Connecticut.

March 28, 2002.

John T. Bochanis, Thomas J. Weihing, Daly, Weihing & Bochanis, Bridgeport, CT, for Plaintiffs.

Joel J. Rottner, Laura Ondrush, Skelly Rottner, P.C., Hartford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiffs, Peter and Catherine Costabile ("the Costabiles") bring this insurance coverage action seeking money damages and other relief arising from fire damage to certain rental property they own. The plaintiffs made a claim under an insurance policy in effect at the time of the loss that was issued by the defendant, Metropolitan Property and Casualty Insurance Company ("Metropolitan"). Met-ropolitan denied coverage for the plaintiffs' loss pursuant to a "vandalism and malicious mischief exclusion." The plaintiffs brought the instant suit, asserting claims for: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) breach of fiduciary duty; (4) violations of the Connecticut Unfair Insurance Practices Act ("CUIPA"); and (5) violations of the Connecticut Unfair Trade Practices Act ("CUTPA").

Currently pending is Metropolitan's Motion for Summary Judgment (Doc. #20). For the following reasons, the defendant's motion is DENIED.

## BACKGROUND

The Costabiles are the owners of a two-story single family home that they rented to tenants, located at 6 Girard Street in Norwalk, Connecticut. The Costabiles entered into an insurance agreement ("the policy") with Metropolitan for the period from October 1, 1998 to October 1, 1999. The policy was a "Landlord's Rental Dwelling Policy" that insured the plaintiffs' rental property.

Sometime in April 1997, within days of a March 30, 1997 eviction order, the last tenants vacated the premises. No tenants resided in the home for more than a year and a half—from early April 1997 to December 1998.

On or about December 6, 1998, a fire occurred at the plaintiffs' property. The plaintiffs reported the fire to Metropolitan on or about December 8, 1998. On or about January 25, 1999, the plaintiffs filed a Sworn Statement in Proof of Loss. The proof of loss itemized damage as $80,900 for the dwelling; $13,500 for loss of rent; $8,090 for debris removal; and $2,500 for miscellaneous furniture and personal property.

Shortly after the plaintiffs submitted their proof of loss, Metropolitan requested that Peter Costabile be examined under oath. On February 24, 1999, Attorney Joel Rottner, counsel for Metropolitan, examined Peter Costabile without counsel for approximately five and a half hours. In a March 18, 1999 letter to Metropolitan, Attorney Rottner advised "we do not recommend a denial of this claim for arson." *See* Mar. 18, 1999 Letter from Joel J. Rottner to Metropolitan Senior Claim Representative Janice Palmer, attached as Exh. F to Pls.' Memo. of Law in Support of Obj. to Mot. for Summary Judgment.

Metropolitan nevertheless denied coverage in light of a routine investigation conducted by the Norwalk Fire Marshal's office that concluded that the fire was incendiary in nature and in light of another investigation conducted at its request by Ronald R. Mullen of Engineering and Fire Investigations that concluded that the fire was incendiary in nature as well. *See* Exh. J to Def.'s Memo. of Law in Support of Mot. for Summary Judgment.

In denying coverage, Metropolitan relied on an exclusion in the policy for "vandalism or malicious mischief" when the premises are vacant or unoccupied for more than thirty (30) consecutive days immediately prior to the loss. Metropolitan forwarded a letter to the plaintiffs, dated April 15, 1999, setting forth the reasons for the denial of their claim. That letter stated, in pertinent part:

After a careful evaluation of all the facts, Metropolitan Property and Casualty Insurance Company regrets to inform you that for the reasons outlined below, me must deny your claims.

Your policy of insurance at Section 1— LOSSES WE DO NOT COVER provides as follows:

1. We do not cover loss or damage to the property described in *Coverage A* and *Coverage B* which results directly or indirectly from any of the following . . .

f. vandalism or malicious mischief or breakage of glass and safety glazing materials if the residence premises was vacant or unoccupied for more than thirty consecutive days immediately prior to the loss.

At page 146 of the Examination Under Oath of Peter Costabile, Mr. Costabile admitted that after 1997 the premises were unoccupied. Our investigation determined that the fire at the premises which occurred on December 6, 1998, was the result of a deliberate human act. Therefore, any loss as a result of this fire is excluded by the above quoted exclusion as a vandalism occurred after the premises were unoccupied for more than thirty consecutive days.

*See* Apr. 15, 1999 Letter from Metropolitan Claim Representative Janice Palmer to Peter and Catherine Costabile, attached as Exh. H to Def.'s Memo. of Law in Support of Mot. for Summary Judgment.

In light of Metropolitan's denial of coverage, the plaintiffs filed the instant action on or about December 2, 1999. Metropolitan now moves for summary judgment, arguing that the vandalism exclusion applies and that the undisputed facts show that the plaintiffs' claim is excluded by that exclusion.

### STANDARD

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When ruling on a summary judgment motion, the court must construe the facts

in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

## DISCUSSION

Metropolitan's motion for summary judgment, relying on one line of cases, argues that the plaintiffs' claim is not covered pursuant to the vandalism or malicious mischief exclusion, because an incendiary fire is a "subset" of vandalism and the fire here was intentionally set by an unknown arsonist or vandal. The plaintiffs, relying on another line of cases, argue that the exclusion does not apply because loss by fire is a named peril otherwise covered by the policy and if Metropolitan intended to exclude a fire loss to a dwelling vacant for more than thirty days it should have expressly done so.

*Metropolitan's Argument*

Metropolitan argues that it is entitled to judgment as a matter of law because the policy unambiguously excludes coverage for the plaintiffs' loss. Metropolitan argues that the policy is an "all-risk" policy which covers losses to the insured dwelling unless otherwise excluded. Metropolitan claims that this "all-risk" form differs from a "named perils" form, which would specify coverage for specific losses such as fire. Metropolitan claims that here, the fire was deliberately set by an unknown vandal, that loss to the insured dwelling by vandalism is expressly excluded, and that, in referring to "vandalism," the policy exclusion includes an incendiary fire.

In support of its motion Metropolitan argues that, because vandalism is not defined by the policy, it must be given its plain, ordinary meaning. It argues that the Connecticut Supreme Court relies primarily on Webster's Third New International Dictionary (1986) for definitions, which defines "vandalism" as follows: "Willful or malicious destruction or defacement of things of beauty or public or private property." It also claims that Webster's defines "arson" as "the willful or malicious burning of or attempt to burn any building, structure or property of another ...." Metropolitan further argues that the Connecticut Supreme Court, in *State v. McGowan,* 20 Conn. 245 (1850), similarly defined arson as the "willful and malicious burning of the house of another."

Metropolitan argues that, given the similarity of the above definitions, arson is simply a subset of vandalism and is, in fact, included within the definition of vandalism. It further claims that the Connecticut Supreme Court expressed a view that arson is considered to be an act of vandalism by the Court's use of the terms "vandalism" and "arson" when describing the underlying facts of a criminal case involving such conduct. *See* Def.'s Memo. of Law in Support of Mot. for Summary Judgment at 12–13 (citing *State v. Anonymous,* 240 Conn. 708, 694 A.2d 766 (1997)).

Metropolitan further argues that, although there have been no Connecticut court cases interpreting vandalism exclusions similar to the one here, the weight of authority supports its position that arson is an act of vandalism within the meaning of the subject exclusion. Metropolitan argues that most courts that have evaluated the relationship between the word "arson" and "vandalism" have concluded that arson is a form of vandalism. *See* Def.'s Memo. of Law in Support of Mot. for Summary Judgment at 13 (citing *Estes v. St. Paul Fire and Marine Ins. Co.,* 45 F.Supp.2d 1227, 1229 (D.Kan.1999)); *Potomac Ins. Co. of Illinois v. NCUA a/k/a National Credit Union Assoc.,* 1996 WL 396100 (N.D.Ill.1996); *American Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) ("a common sense interpretation of the insurance contract's 'vandalism or malicious mischief' provision ... suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal"); *Frazier v. State Farm Fire and Cas. Co.,* 957 F.Supp. 816 (W.D.Va.1997) (vacancy exclusion applied and barred coverage for fire set in residence by vandals thirty-one days after home became vacant).

Specifically, Metropolitan argues that the court was faced with the same insurance policy interpretation that the court faces here in *Estes v. St. Paul Fire and Marine Ins. Co.,* 45 F.Supp.2d 1227, 1229 (D.Kan.1999). In *Estes,* the policy stated that it "covers your home for vandalism and glass breakage as long as you haven't left it vacant for more than thirty days or more." Having found that there was no ambiguity in the disputed policy terms, the court found that the policy exclusion included arson:

the Court finds that in referring to "vandalism," the policy exclusion includes arson. Plaintiff argues that "vandalism" does not include arson because the crime of arson requires the additional element of burning. Plaintiff has cited no authority for excluding the burning of property from the definition of vandalism. Vandalism is commonly defined as "the willful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New Int'l Dictionary (1986) at 2532. On the other hand, arson is defined as "the willful malicious burning of or attempt to burn any building, structure or property of another (as a house, a church, or a boat) or of one's own usu. with criminal or fraudulent intent." *Id.* at 1229. Arson of a private dwelling clearly is within the plain and ordinary meaning of vandalism. *See Potomac Ins. Co. v. NCUA,* No. 96 C 1044, 1996 WL 396100, at *4 (N.D.Ill. July 12, 1996) (ordinary meaning of "vandalism" includes arson); *American Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) (common sense definition of "vandalism or malicious mischief" includes a fire set by an unknown arsonist or vandal); *Brinker v. Guiffrida,* 629 F.Supp. 130, 135 (E.D.Pa.1985) (arson is a type of vandalism). Here, the parties agree that plaintiff's loss was caused by a fire that "was intentionally set by an unknown arsonist and/or vandal." Thus, the vandalism exclusion applies.

*Estes,* 45 F.Supp.2d at 1229.

Similarly, in *Potomac Ins. Co. of Illinois v. NCUA a/k/a National Credit Union Assoc.,* 1996 WL 396100 (N.D.Ill.1996), the defendant issued an "all-risk" policy to the insured. Shortly after procuring the subject policy of insurance, the insured premises became unoccupied. Approximately four months later, the property was set on fire by an unknown arsonist. Potomac denied coverage under a provision that read: "If the building where the loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage we will: Not pay for any loss or damage caused by: vandalism ..." *Id.* at

*4. Because the building had been vacant for more than sixty days prior to the fire, and because the fire was intentionally set by persons unknown, Potomac took the position that arson constituted vandalism and that coverage was excluded.

As Metropolitan urges the court to do in this case, the *Potomac* court compared the dictionary definitions of "arson" and "vandalism" and concluded that arson is a type of vandalism. The court reasoned:

> Since "vandalism" is not defined in the policy, we must afford the term its plain, ordinary, and popular meaning. *Outboard Marine Corp.*, 180 Ill.Dec. 691, 607 N.E.2d at 1215–16. Illinois courts often look to Webster's International Dictionary for guidance when divining the "usual and ordinary" meaning of contract language, *see id.*, and this source defines "vandalism" as the "willful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New International Dictionary 2532 (1986); *accord* The American Heritage Dictionary of the English Language 1973 (3d ed.1992). Similarly, "arson" is defined by Webster's as "the willful and malicious burning of or attempt to burn any building, structure, or property of another (as a house, a church, or a boat) or of one's own [usually] with criminal or fraudulent intent." Webster's Third New International Dictionary 122 (1986); *accord* The American Heritage Dictionary of the English Language 103 (3d ed.1992).
>
> Considering these sources and the ordinary meaning of the terms, it is apparent that arson—the willful or malicious destruction of public or private property through the setting of a fire—is a type of vandalism. Although NCUA argues that the ordinary person would not equate serious acts of arson with petty instances of vandalism, we find the conclusion NCUA draws from this assertion—that arson does not constitute a species of vandalism—untenable. Rather, given the definitions quoted above and the ordinary meanings of the two terms, we must conclude that arson does indeed fall within the definition of vandalism. We are mindful of our obligation to construe policy limitations narrowly. Yet this principle of construction does not permit us to unreasonably interpret a limitation provision out of an insurance contract, but only to give insureds the benefit of an ambiguous term. The language of the Policy in this case is not ambiguous: the willful destruction of property is not covered if the building has been vacant for sixty consecutive days. Under the facts stipulated for purposes of this motion, Gonsch's building was vacant for more than sixty days prior to the fire, and the fire was intentionally set by persons unknown. Thus, under this set of facts, the vacancy provision in the Policy plainly and unambiguously eliminates coverage. Because the Policy's clear and unambiguous terms must be applied as written, *Hurst–Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir.1995), we must conclude that Potomac has no coverage obligations for damage caused by arson at the insured premises.

*Potomac*, 1996 WL 396100 at *4.

Similarly, in *American Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir.1989), Metropolitan argues, the Eleventh Circuit Court of Appeals, applying Georgia law, held that a policy's "vandalism or malicious mischief" provision excluded coverage for arson when the resident premises had been vacant for more than thirty days. The Court stated that "a common sense interpretation of the insurance contract's 'vandalism or malicious mischief' provision ... suggests that it would apply to a fire set in a vacant house

by an unknown arsonist or vandal." *Id.* at 379.

In short, Metropolitan argues that an incendiary fire is a subset of vandalism and that the vandalism exclusion therefore applies. It further claims that it is undisputed that the fire in this case was intentionally set by an unknown arsonist and that the building was unoccupied or vacant more than thirty days before the loss. Accordingly, Metropolitan claims that it is entitled to judgment as a matter of law.

*The Costabiles' Argument*

The plaintiffs argue that the cases on which the defendants rely interpret insurance policies in the same manner as contracts generally, rather than under the more favorable rules of construction for insurance policies that they claim Connecticut follows. The plaintiffs argue that the Court must be guided by the rules of construction set out by the Connecticut Supreme Court in *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 513, 442 A.2d 920 (1982) which, they argue, provides that when the words of an insurance contract are susceptible to two interpretations, the construction most favorable to the insured must be adopted.

Specifically, the plaintiffs argue that the policy language here creates an ambiguity and that the policy must be construed in favor of them against the defendant. The plaintiffs argue that "fire" and "vandalism or malicious mischief" are listed in the insurance policy as two separate causes of loss or perils. They argue that the undefined term "vandalism and malicious mischief" cannot be read so broadly so as to include a fire and that the exclusions of coverage under the insurance policy which involve vacancy do not include a loss caused by fire.

The plaintiffs argue that a similar insurance contract ambiguity was found to exist and was resolved in favor of the insured in *Nationwide Mut. Fire Ins. Co. vs. Nation-wide Furniture, Inc.*, 932 F.Supp. 655 (E.D.Pa.1996). In that case, the plaintiffs claim, the court held that a vacancy exclusion for loss or damage caused by vandalism did not apply to a fire set by vandals. Similar to the insurance policy here, they argue, the policy in *Nationwide* listed fire and vandalism as separate causes of covered losses. In a separate insurance provision excluding coverage due to vacancy of the building for more than sixty consecutive days before a loss or damage "vandalism" was listed, but not fire.

In finding that coverage existed notwithstanding the fact that the fire was caused by vandals, the court stated, in pertinent part:

> It may very well be that both fire and vandalism in some sense were contributing factors to the damage. The vacancy paragraph does not specifically deal with such a situation .... While Nationwide Insurance argues that vandalism includes intentional acts of an incendiary nature, it is not clear from the policy that this undefined term can be read so broadly. Because fire and vandalism are listed in the policy as separate causes of loss, we conclude that at best the word vandalism is ambiguous. It must be construed against the insurer so as not to encompass damage involving a fire. In other words, we interpret the policy to provide coverage when fire damages a vacant building even though vandals may have set the blaze. If Nationwide Insurance had wished the result to be otherwise, it could easily have defined vandalism to include non-accidental fires. It also could have added fire or at least intentionally ignited fire to the list of causes for which no payment would be made for damage to an unoccupied building.

*Nationwide,* 932 F.Supp. at 657. Accordingly, the court found an ambiguity in the

policy and resolved that ambiguity in favor of the insured.

The plaintiffs argue that the facts of *Nationwide* are almost identical to the instant case. They claim that Metropolitan has not inserted an expansive vacancy or unoccupancy exclusion in its policy. Instead, it has restricted such an exclusion to the specified perils including "vandalism and malicious mischief" but has not expanded it to cover a fire loss which is a separately covered loss.

The plaintiffs also rely on *Tillman v. South State Ins. Co.,* 284 S.C. 273, 325 S.E.2d 585 (S.C.Ct.App.1985), which held that the insurer was liable for a fire loss under a homeowner policy even though the home had been vacated for more than thirty days when it was destroyed by a fire set by unknown persons.

In *Tillman,* South State insured a home owned by the plaintiffs. The home was vacated for over thirty days when it was destroyed by fire which was deliberately set by "unknown person or persons." The policy at issue read:

Section 1. Perils Insured Against
1. Fire or lightning.

. . . . .

8. Vandalism or malicious mischief. This peril does not include loss to property on the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

*Id.* at 273–74, 325 S.E.2d 585. South State argued that the loss was due to vandalism or malicious mischief and was therefore excluded. The Tillmans argued that the fire coverage was not limited by the occupancy requirement. The court, sustaining a judgment for the insureds, stated:

If the drafters of the policy intended to exclude a fire loss to a dwelling vacant for over thirty days, it could have easily done so with language similar to paragraph 8.

*Id.* at 274, 325 S.E.2d 585. Because fire coverage under the policy was not limited by an occupancy requirement contained in the vandalism or malicious mischief coverage, the court of appeals affirmed a judgment in favor of the insured. *See id.*

Similarly, the plaintiffs argue, if Metropolitan wanted to exclude coverage for a fire loss due to vacancy, it could have easily added such language next to its description of loss by fire. The plaintiffs argue that the defendant instead has shown a contrary intention by covering a fire loss regardless of its cause.

The plaintiffs further claim that the cases relied upon by Metropolitan are distinguishable. First, the plaintiffs argue that *Estes* and *American Mutual* interpreted insurance policies under principles of general contract law, rather than Connecticut principles of insurance contract interpretation that they claim tend to construe policies against the insurer. Second, the plaintiffs argue that the defendant's attempts to distinguish *Nationwide* and *Tillman* as cases involving "named perils" policy forms is unsupported and contrary to a reading of the policy in the instant case. The plaintiffs argue that the insurance policy here specifically identifies separate perils similar to the policies in *Nationwide* and *Tillman.*

In short, the plaintiffs claim that the vandalism or malicious mischief exclusion does not apply because loss by fire is a named peril otherwise covered by the policy and if Metropolitan intended to exclude a fire loss to a dwelling vacant for more than thirty days it should have expressly done so.

*Analysis*

Metropolitan argues that the policy at issue is an "all-risk" policy while the Cos-

tabiles claim it is a "named perils" form. The Court finds that the policy provides both all-risk and named perils type coverage, depending on the property coverage at issue.

In the coverage section of the policy, the policy provides, in pertinent part:

SECTION I LOSSES WE COVER

. . .

COVERAGE A—DWELLING AND COVERAGE B—PRIVATE STRUCTURES

We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B except as excluded in Section I—Losses We Do Not Cover.

COVERAGE C—PERSONAL PROPERTY

We will pay for sudden and accidental direct physical loss or damage to the property described in Section I—Coverages, Coverage C—Personal Property, except as excluded in Section I—Losses We Do Not Cover, caused by:

1. Fire or Lightning

. . . . .

8. Vandalism or Malicious Mischief. We do not cover loss to property on the residence premises if the dwelling has been vacant or unoccupied for more than 30 consecutive days immediately before the loss.

*See* Policy at 6, attached as Exh. A to Pls.' Memo. of Law in Support of Obj. to Mot. for Summary Judgment. The exclusion section of the policy provides, in pertinent part:

SECTION I LOSSES WE DO NOT COVER

1. We do not cover loss or damage to the property described in *Coverage A* and *Coverage B* which results directly or indirectly from any of the following:

. . . . .

F. Vandalism or malicious mischief or breakage of glass and safety glazing materials if the residence premises was vacant or unoccupied for more than 30 consecutive days immediately prior to the loss. A residence premises being constructed is not considered vacant or unoccupied.

*See* Policy at 7, attached as Exh. A to Pls.' Memo. of Law in Support of Obj. to Mot. for Summary Judgment.

■ Accordingly, the policy provides "all-risk" coverage with respect to Coverage A (the dwelling) and Coverage B (private structures), except as excluded under the Section entitled "Losses We Do Not Cover," which includes the vandalism or malicious mischief exclusion on which Metropolitan relies.

■ Conversely, the policy is a named perils form with respect to Coverage C (personal property). Specifically, with respect to personal property, except as excluded in Section I entitled "Losses We Do Not Cover," the policy expressly sets forth named perils for which insurance coverage applies. For example, under Coverage C (personal property), the policy provides insurance coverage for a loss to personal property caused by fire, and *provides* coverage for personal property losses resulting from vandalism or malicious mischief *unless* the dwelling has been vacant or unoccupied for thirty consecutive days prior to the loss. Unlike Coverages A and B, however, Coverage C (personal property) is not subject to the vandalism or malicious mischief exclusion set forth in the first section of "Section I—Losses We Do Not Cover."

Thus, in the policy at issue here, damage to the dwelling or private structures and damage to personal property are separate and distinct types of coverage contained in a single policy.

It appears that both parties are correct regarding the relevant case law for policies that are exclusively all-risk or exclusively named perils forms. Metropolitan is correct that the weight of authority addressing vandalism or malicious mischief exclusions in "all-risk" policies tends to find arson or other incendiary fires included within the meaning of vandalism and, accordingly, find loss by an incendiary fire to be unambiguously excluded by the vandalism exclusion. At the same time, the Costabiles are correct that the weight of authority addressing vandalism or malicious mischief exclusions in "named perils" policies tends to find in favor of the insured on the theory that an ambiguity arises where loss by fire is a named peril otherwise covered by the policy and the vandalism exclusion does not expressly reference an incendiary fire. The parties, however, have pointed to no authority—and the Court is aware of none—that addresses the question whether arson is appropriately considered an act of vandalism where, as here, the policy at issue is a hybrid that contains both all-risk and named perils coverage in separate and distinct coverage sections insuring separate and distinct property. This appears to be a question of first impression and certainly is one under Connecticut law.

■ Indeed, there appear to be no Connecticut cases interpreting vandalism exclusions similar to the one at issue here. Under such circumstances, a federal court "must predict how the highest state court would rule." *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F.Supp. 164, 190 (D.Conn.1984).

■ Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 791 A.2d 489, 496 (2002). "If the words of an insurance policy are plain and unambiguous, the established rules for the construction of contracts apply; the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning; and courts cannot indulge in a forced construction, ignoring provisions or so distorting them as to accord a meaning other than that intended by the parties." *Schultz v. Hartford Fire Ins. Co.*, 213 Conn. 696, 702–03, 569 A.2d 1131 (1990). Thus, "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity ...." *Barnard v. Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990) (citations and quotations omitted). "The determinative question is the intent of the parties, that is, what coverage the ... [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy." *Buell*, 259 Conn. 527, 536, 791 A.2d 489, 496 (citing *Heyman Assoc. No. 1 v. Ins. Co. of Pennsylvania*, 231 Conn. 756, 769–70, 653 A.2d 122 (1995)); *see also Marcolini v. Allstate Ins. Co.*, 160 Conn. 280, 283, 278 A.2d 796 (1971). "'[E]ach and every sentence, clause, and word of a contract of insurance should be given operative effect. Since it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction ....'" *Buell*, 259 Conn. 527, 541–42, 791 A.2d 489, 498–499 (quoting *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 548, 687 A.2d 1262 (1996), quoting 2 G. Couch, Insurance (3d ed.1995) c. 22, § 22.43, pp. 22–90 through 22–92). The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. *See, e.g., Bria v. St. Joseph's Hosp.*, 153 Conn. 626, 630–31, 220 A.2d 29 (1966).

■ Where the terms of a policy are of doubtful meaning, however, it is then that

the construction most favorable to the insured must be adopted. *See, e.g., Schultz,* 213 Conn. at 702, 569 A.2d 1131. As stated by the Connecticut Supreme Court:

"[w]hen the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." *Raffel v. Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716 (1954); *see also* 4 Williston, Contracts (3d ed.) § 621.

"This rule—that the construction most favorable to the insured be adopted—rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted." *Roby v. Connecticut General Life Ins. Co.,* 166 Conn. 395, 402, 349 A.2d 838 (1974). The rule itself derives from the established principle of contract construction that, where the terms of a contract are equally susceptible to two different meanings, that favoring the party who did not draw up the contract will be applied. "The premise operating behind the rule would seem to be a psychological one. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests." *Ravitch v. Stollman Poultry Farms, Inc.,* 165 Conn. 135, 146 n. 8, 328 A.2d 711 (1973). A further, related rationale for the rule is that "[s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter. 4 Williston, op. cit. § 621, p. 760." *Simses v. North American Co. for Life & Health Ins.,* 175 Conn. 77, 84–85, 394 A.2d 710 (1978). Courts follow that rule

because the insurance company's attorneys, officers, or agents prepare the policy and it is their language that must be interpreted.

*Griswold,* 186 Conn. at 513, 442 A.2d 920.

Construing the terms of the policy at issue here according to the general rules of contract construction, the Court arrives at a different conclusion for the separate and distinct types of coverage at issue.

■ With respect to Coverage C (personal property), the Court finds an ambiguity. Although the vandalism exclusion in "Section I—Losses We Do Not Cover" does not apply to Coverage C, there is an issue whether an incendiary fire is to be included within the definition of vandalism within the occupancy limitation on vandalism coverage. Because fire and vandalism are listed in Coverage C as separate causes of loss, however, the Court concludes that it is ambiguous whether the word "vandalism" is ambiguous as used that section of coverage. This ambiguity must be construed against the insurer so as not to encompass personal property damage involving a fire. If Metropolitan "had wished the result to be otherwise, it could easily have defined vandalism to include non-accidental fires. It also could have added fire or at least intentionally ignited fire to the list of causes for which no payment would be made for [personal property] damage [in] an unoccupied building." *Nationwide,* 932 F.Supp. at 657. Accordingly, the Court finds that the coverage limitation does not apply to personal property coverage because it is ambiguous in that section whether vandalism includes an incendiary fire.

■ The Court arrives at a different conclusion for Coverages A and B. Coverages A and B provide "all-risk" coverage, stating that Metropolitan "will pay for sudden and accidental direct physical loss or

damage to the property described in Coverages A and B, except as excluded in Section I—Losses We Do Not Cover." "The label 'all-risk,' however, is essentially a misnomer." *Standard Structural Steel Co.,* 597 F.Supp. at 191; *see also Aetna Cas. & Sur. Co. v. Yates,* 344 F.2d 939, 940 (5th Cir.1965) (Friendly J., sitting by designation); *City of Burlington v. Hartford Steam Boiler Insp. and Ins. Co.,* 190 F.Supp.2d 663, 673 (D.Vt.2002). The language of all-risk policies is not to be given a restrictive meaning. *See, e.g., Standard Structural Steel Co.,* 597 F.Supp. at 191; *see also Sansone v. Nationwide Mut. Fire Ins. Co.,* 47 Conn.Supp. 35, 39–40, 770 A.2d 500 (Conn.Super.Ct.1999) (all-risk policy "covers all loss except for the enumerated exclusions .... The term 'all-risk' is not to be given a restrictive meaning.") (citing 30 A.L.R.5th 170 (1995)); *Mohawk Mountain Ski Area, Inc. v. American Home Assurance Co.,* No. 056905, 1995 WL 43696 at *15 (Conn.Super.Ct. Jan. 30, 1995)(all-risk policy not to be given restrictive meaning; such a policy "by its very nature affords broader coverage than can be encompassed by a reductive definition of risk."); *United States Surgical Corp. v. United States Fire Ins. Co.,* No. 28 20 11, 1990 WL 277471 at *2 (Conn.Super.Ct. Oct. 5, 1990). All-risk policies, however, are not 'all loss' policies—rather, all-risk policies, including the policy at issue here, often contain express written exclusions and implied exceptions that have been developed by the courts over the years. *See Standard Structural Steel Co.,* 597 F.Supp. at 191. In short, "[a] policy of insurance insuring against 'all-risks' is to be considered as creating a special type of insurance extending to risks not usually contemplated, and recovery will usually be allowed, at least for all losses of a fortuitous nature, in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage." *Standard Structural Steel Co.,* 597 F.Supp. at 191 (citing Annot. 88 A.L.R.2d 1122, 1125, "Coverage Under 'All Risks' Insurance" (1963)).

With respect to Coverages A and B (the all-risk sections of the policy), the Court finds that the policy contains a specific and unambiguous provision that could, if the facts permit, expressly exclude the plaintiffs' loss.

Because vandalism is not defined by the policy, under the Connecticut rules of construction, it must be given its plain, ordinary meaning. *See, e.g., Schultz,* 213 Conn. at 702, 569 A.2d 1131. The Connecticut Supreme Court has long looked to Webster's Third International Dictionary (1986) for guidance when determining the "usual and ordinary" meaning of contract language. Webster's defines "vandalism" as the "[w]illful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New International Dictionary 2532 (1986); *accord* The American Heritage Dictionary of the English Language 1973 (3d ed.1992). Similarly, Webster's defines "arson" as "[t]he willful and malicious burning of or attempt to burn any building, structure, or property of another (as a house, a church, or a boat) or of one's own [usually] with criminal or fraudulent intent." Webster's Third New International Dictionary 122 (1986); *accord* The American Heritage Dictionary of the English Language 103 (3d ed.1992).

In addition, the defendant is correct that the Connecticut Supreme Court, when describing the underlying facts of a case involving a criminal defendant who was charged with arson, appeared to express a view that arson is considered an act of vandalism. In *State v. Anonymous,* 240 Conn. 708, 694 A.2d 766 (1997), the Court stated:

Between June 4, 1992 and August 18, 1994 a series of *acts of vandalism* occurred in and around the Towns of Haddam and Killingworth, including: ... (2) the destruction of a wooden street sign by *arson*; ... and (4) the total or partial destruction of several school buses on the premises of the Haddam–Killingworth High School by *arson* ...

*Id.* at 711, 694 A.2d 766 (emphasis added).

The conclusion that an incendiary fire is included within the plain and ordinary meaning of the term "vandalism" in Coverages A and B is further supported by the weight of authority addressing vandalism exclusions under policies that provide all-risk coverage and do not list fire and vandalism as separate causes of loss. *See, e.g., Estes v. St. Paul Fire and Marine Ins. Co.,* 45 F.Supp.2d 1227, 1229 (D.Kan. 1999); *Potomac Ins. Co. of Illinois v. NCUA a/k/a National Credit Union Assoc.,* 1996 WL 396100 (N.D.Ill.1996); *American Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) ("a common sense interpretation of the insurance contract's 'vandalism or malicious mischief' provision ... suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal").

 Considering these sources and the ordinary meaning of the terms, the Court believes that the Connecticut Supreme Court would conclude that arson—the willful or malicious destruction of public or private property through the setting of a fire—is a type of vandalism. Given the definitions quoted above, the ordinary meanings of the two terms, and the weight of authority with respect to all-risk coverage, the Court concludes that, where, as here, a policy section provides all-risk coverage and does not list fire and vandalism as separate causes of loss, no ambiguity arises and arson does indeed fall within the definition of vandalism.

 Although the Court is mindful of its obligation to construe policy limitations narrowly, "this principle of construction does not permit [the Court] to unreasonably interpret a limitation provision out of an insurance contract, but only to give insureds the benefit of an ambiguous term." *Potomac,* 1996 WL 396100 at *4. The language of the policy in Coverages A and B is not ambiguous: the willful destruction of property is not covered if the building has been vacant or unoccupied for thirty consecutive days. If the facts were to show that the Costabile's building was vacant or unoccupied for more than thirty days prior to the fire, and the fire was intentionally set by persons unknown, the vandalism or malicious mischief exclusion set forth in "Section I—Losses We Do Not Cover" for Coverages A and B would plainly and unambiguously eliminate coverage. Because the Policy's clear and unambiguous terms must be applied as written, if the facts were to establish that the Costabile's building was vacant or unoccupied for more than thirty days prior to an incendiary fire, Metropolitan would have no coverage obligations under Coverages A or B for damage to the dwelling caused by an incendiary fire at the insured premises.

Although the Court finds that, as a *legal* matter, the policy exclusion could apply to bar any claims by the plaintiffs under Coverages A and B, the Court finds that material issues of genuine fact remain whether the factual predicate exists for the exclusion to apply.

For example, a genuine issue of material fact exists whether the fire was indeed incendiary in nature. Metropolitan claims that the fire was the result of a deliberate human act. It claims that Fire Investigator Glenn Iannaccone of the Norwalk Fire Department concluded in his Fire Investigation Report as follows:

Ignition sources in this structure as related to utilities was eliminated. According to CL & P, the electrical service to this building was shut off on January 20, 1998. The gas service was turned off and sealed on May 9, 1997 and the account closed on June 12, 1997, as reported by Yankee Gas. The only utility which remained on was the water supply. It is because of these factors that I believe that this fire started by incendiary means. The concentration of fire damage to the staircase and surrounding areas along with the evidence of a flammable liquid pour pattern on the only stair tread left, the lowest cellar stair, leads this inspector to believe that, more probably than not, that this fire was intentionally set and is considered to be arson.

See Exh. E to Def.'s Memo. of Law in Support of Mot. for Summary Judgment.

Metropolitan argues that another investigation conducted at its request by Ronald R. Mullen of Engineering and Fire Investigations concluded that there were two points of origin and that the fire was incendiary in nature as well. See Exh. J to Def.'s Memo. of Law in Support of Mot. for Summary Judgment.

The plaintiffs, however, have retained John Barracato, a certified fire investigator and formerly an Assistant Vice President for fourteen years for AETNA Life and Casualty, who would testify that an accidental fire cannot be ruled out in the instant case. See Aff. of John Barracato dated June 22, 2001, attached to Pl.'s Memo. of Law in Support of Obj. to Mot. for Summary Judgment as Exhibit F.

Genuine issues of material fact also exist with respect to the questions whether the premises were vacant or unoccupied. With respect to whether the premises were "vacant," the plaintiffs argue that they had appliances including a gas stove and a washing machine in the house. In addition, they claim that furniture was present in the house including a kitchen table and chairs, dining room buffet and lamps. With respect to whether the premises were "occupied," the plaintiffs argue that after the last tenant left the premises, the plaintiff Peter Costabile continued to go to the property on a frequent basis. The plaintiffs claim that they were in the process of performing construction work inside including replacing carpets, door frames, moldings, ceiling tiles, windows and sheet rocking. They claim that, contrary to the defendant's contention, the gas valve located inside the premises were not locked. They further claim that a bed frame, box spring and mattress were found in the basement of the dwelling after the fire.

The plaintiffs also argue that the vacancy exclusion relied upon by Metropolitan is inapplicable if the residence premises are "being constructed." The plaintiffs claim that they were performing construction work on the premises prior to the fire and, accordingly, the exclusion is not applicable.

In short, although the Court holds as a legal matter that the conclusion may apply, the ultimate question whether the exclusion will apply is a fact-intensive one. The Court finds that genuine issues of material fact exist that are unlikely to be eliminated by additional briefing and instead, are appropriate for resolution by a jury. Accordingly, the defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, Metropolitan's Motion for Summary Judgment (Doc. # 20) is DENIED.