Filed 4/3/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HUNG VAN ONG, | B252773 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC480676) |
| v. | |
| FIRE INSURANCE EXCHANGE, | |
| Defendant and Respondent. | |

 APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Reversed.

 Law Offices of Dale Washington and Dale E. Washington for Plaintiff and Appellant.

 Archer Norris, Limor Lehavi and Paul J. Whitfield, for Defendant and Respondent.

————————————————

Plaintiff and appellant Hung Van Ong (Plaintiff) appeals from a stipulated judgment entered in favor of defendant and respondent Fire Insurance Exchange (Defendant) after the trial court granted Defendant's motion for summary adjudication of Plaintiff's claim for breach of contract.[1]  Plaintiff contends that the trial court erred in concluding that a vacancy exclusion in his policy for a loss from "vandalism or malicious mischief" applied to fire damage caused by a warming fire started by a transient that spread to other parts of the property.  We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff bought the insured property at issue from his brother, Eugene Ong (Eugene), in 2007.  The last tenants moved out in February 2010.  Gas and electric utilities were turned off.  On December 20, 2011, Eugene submitted a claim to Defendant on Plaintiff's behalf for a fire at the property earlier on December 20, 2011.  Defendant retained an experienced fire investigator, Guy Childress.  On December 23, 2011, Childress went to the property to investigate and made a written report concluding, "it appears the fire may have been initiated as the result of an uncontrolled warming fire started by an unauthorized inhabitant.  Signs of possible habitation were present and the relatively isolated location would permit this.  This [*sic*] presence of firewood[2] in the adjacent room and the mattress next to the large hole in the floor also supports this theory.  It is possible the holes burned in the floor by the door were the result of the occupant attempting to throw burning wood outside when the warming fire got out of control."

A claims log indicated that a claims adjuster for Defendant, Debra Kryklund, met with Childress and others on December 23, 2011, and noted the following:  "Kitchen.

---

[1] Plaintiff's complaint also asserted a claim for insurance bad faith.

[2] The property did not have a fireplace.

Multiple pts of origin. Bed in kitchen. Unintentional incendiary. Likely transient in house and warming fire got out of hand. Firewood found inside house."[3]

On February 10, 2012, Kryklund sent Plaintiff a letter disclaiming coverage for his claim. Kryklund's letter stated, "Our investigation indicates that this loss was the result of vandalism. A trespasser entered the vacant dwelling and intentionally set a fire on the kitchen floor." Specifically, Plaintiff's policy with Defendant "stated, "We do *not* cover direct or indirect loss from: . . . 4. *Vandalism* or *Malicious Mischief,* breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days[4] just before the loss. A dwelling under construction is not considered vacant."[5] Vandalism is not defined in the policy.

---

[3] Although Defendant's objected below to Plaintiff's submission of the log, the trial court overruled this objection. The trial court sustained Defendant's objections to Plaintiff's other evidence and Plaintiff does not challenge those rulings on appeal.

[4] Acknowledging that Insurance Code section 2071's standard file policy provisions apply even if Plaintiff's loss is characterized as "vandalism," Defendant states that the time requirement for "vacancy" in this matter is extended to 60 days to comply with the statute. Under California law, all fire insurance policies (or policies insuring against fire as well as other perils) must include the standard form provisions provided by Insurance Code section 2071 or provisions that are "substantially equivalent to or more favorable to the insured" than the standard form. (Ins. Code, § 2070.) California's standard form requires coverage for all loss by fire but allows exclusion for liability for a loss occurring while a covered property is vacant or unoccupied beyond a period of 60 consecutive days. (Ins. Code, § 2071.)

[5] This exclusion applies to coverage for the dwelling (Coverage A) and for separate structures (Coverage B) but not to the landlord's personal property (Coverage C). The policy is an all risk or "open peril" policy as to coverage for dwelling and separate structures, stating that it "insure[d] for accidental direct physical loss to property described in Coverage A [Dwelling] and B [Separate Structures], subject to the exclusions and limitations described elsewhere in Section I of this policy, except we do *not* insure for loss where **earth movement, water damage,** or **nuclear hazard** occur, however caused, as further explained in this policy." (Emphasis in original.) It is a named risk policy as to personal property stating that it "insure[d] for accidental direct physical loss to property described in Coverage C [Landlords Personal Property], subject to the exclusions and limitations described elsewhere in Section I of this policy, caused only by these perils: 1. Fire or lightning; . . . 7. Smoke, if loss is sudden and accidental;

3

On March 26, 2012, Plaintiff filed his complaint for breach of contract and insurance bad faith. On November 28, 2012, Defendant filed a motion for summary adjudication on the grounds that the vacancy exclusion barred coverage for the loss under the policy's "Coverage A–Dwelling" section as Plaintiff was seeking "coverage for an intentionally set fire that destroyed a vacant dwelling." After opposition by Plaintiff, the trial court on October 2, 2013, granted Defendant's motion for summary adjudication, stating that "[t]he unauthorized person or persons who intentionally set the fire on the kitchen floor certainly created an obvious hazard to the dwelling without justification, excuse or mitigating circumstances," apparently relying on the definition of "malice in law" established in criminal cases on arson that had been cited by Defendant. The trial court also held that "the dwelling was vacant as contemplated in the fire insurance policy."

On March 25, 2014, the trial court entered a stipulated judgment. Plaintiff appeals.

## DISCUSSION

On appeal, Plaintiff contends that the trial court erred because the fire was negligently lit and since the definition of vandalism requires an intent to destroy property it was not vandalism under the ordinary and popular sense of the term. Plaintiff also argues that the trial court erred because the dwelling was inhabited by a transient and therefore not vacant, because the application of the vandalism exclusion to fire losses was not conspicuous and frustrated an insured's reasonable expectations, because Defendant was estopped from making its argument because it listed vandalism separately from fire in other parts of the policy, because the exclusion contravened Insurance Code section 2071, and because an endorsement to the policy provided for coverage for loss by fire from an excluded cause.

8. Vandalism or Malicious Mischief; . . . ." "Accidental" means "unintended or unexpected by the insured [citations]." (Crosky et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2014) ¶ 6:275.1, p. 6B-32.)

4

## I. Standard of Review and Insurance Law Principles

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code of Civ. Proc., § 437c, subd. (p)(1); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) Where summary judgment has been granted, "[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

The California Supreme Court has recently reiterated the principles that apply when interpreting an insurance policy in *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 194-195:

"'"'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; see *AIU* [*Ins. Co. v. Superior Court* (1990)] 51 Cal.3d [807,] 821-822' (*Foster–Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868.) 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' (*Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1264; Civ. Code, § 1636.) 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' (*AIU*, *supra*, 51 Cal.3d at p. 822; Civ. Code, § 1639.) 'If contractual language is clear and explicit, it governs.' (*Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1264.) '"The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' ([Civ. Code,] § 1644),

5

controls judicial interpretation. (*Id.*, § 1638.)" [Citations.]' (*Waller v. Truck Ins. Exchange, Inc.* [(1995)] 11 Cal.4th [1,] at p. 18.)"

The Supreme Court has also explained that a term "is not ambiguous merely because the policies do not define it." (*State of California v. Continental Ins. Co.*, *supra*, 55 Cal.4th at p. 195; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 866; *Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at pp. 1264-1265; *Castro v. Fireman's Fund American Life Ins. Co.* (1988) 206 Cal.App.3d 1114, 1120.) Rather a provision will be considered ambiguous when it is "capable of two or more constructions, both of which are reasonable." (*State of California v. Continental Ins. Co.*, *supra*, 55 Cal.4th at p. 195; *Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 18, citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, *supra*, 5 Cal.4th at p. 867.) Moreover, """"language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."""" (*State of California v. Continental Ins. Co.*, *supra*, 55 Cal.4th at p. 195; *Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1265, italics omitted, quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7.) Thus, a term is not ambiguous because of "'[d]isagreement concerning the meaning of a phrase,'" or """"the fact that a word or phrase isolated from its context is susceptible of more than one meaning."""" (*State of California v. Continental Ins. Co.*, *supra*, 55 Cal.4th at p. 195; *Castro v. Fireman's Fund American Life Ins. Co.*, *supra*, 206 Cal.App.3d at p. 1120.)

"'If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.'" (*State of California v. Continental Ins. Co.*, *supra*, 55 Cal.4th at p. 195; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37.) The California Supreme Court has further stated that policy exclusions are strictly construed (*MacKinnon v. Truck Ins. Exchange* (2003)

6

31 Cal.4th 635, 648), but exceptions to exclusions are broadly construed in favor of the insured (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1193).

## II. Analysis

Applying these principles to the instant case, we turn to the meaning of vandalism in its "ordinary and popular sense." As the trial court noted, "'Vandalism' refers to 'willful or malicious destruction or defacement of public or private property.' Merriam-Webster Dictionary (2012)."[6] "Malicious" in turn is defined in the dictionary as "having or showing a desire to cause harm to someone." (Merriam-Webster Dict., *supra.*) Using these dictionary definitions, vandalism in the ordinary and popular sense, means the willful destruction of property or the destruction of property with a "desire to cause harm." The trial court, however, did not look to the dictionary to define "malicious" in its "ordinary and popular sense."[7] Rather the trial court relied on the meaning of malice in the "legal sense," and specifically of "malice in law" in two criminal cases cited by Defendant. This was error.

In *In re V.V.* (2011) 51 Cal.4th 1020, the California Supreme Court concluded that minors' "acts of intentionally igniting and throwing a firecracker amidst dry brush on a hillside, although done without intent to cause a fire or other harm, were sufficient to establish the requisite malice for arson." (*Id.* at p. 1023.) Under the Penal Code, a person is guilty of arson when he or she "willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land, or property" (Pen. Code, § 451) and "maliciously" is defined as involving "a wish to vex, defraud, annoy or injure another

---

[6] Similarly, Merriam-Webster's on-line dictionary defines "vandalism" as "the act of deliberately destroying or damaging property" and Oxford Dictionaries on-line defines it as "Action involving deliberate destruction of or damage to public or private property."

[7] The trial court did not consider the meaning of the phrase "willful" destruction of property. Indeed, given that the evidence suggested that the transient kicked the firewood in an attempt to stop the spread of the fire and the fire was described by the insurance company's claim adjuster as "[u]nintentional incendiary" and as a warming fire that "got out of hand," we believe there would be a triable issue of fact as to whether the fire was intended to be destructive of property.

7

person, or an intent to do a wrongful act, established either by proof or presumption of law" (Pen. Code, § 450, subd. (e)).  (*In re V.V.*, *supra*, 51 Cal.4th at p. 1027.)  The Supreme Court explained that the Penal Code's definition of "maliciously" contained two types of malice:  (1) malice in fact—defined as "a wish to vex, annoy or injure"— consists of actual ill will or intent to injure and (2) malice in law—defined as "an intent to do a wrongful act, established either by proof or presumption of law"— may be "'presumed' or 'implied' from the intentional doing of an act without justification or excuse or mitigating circumstances."  (*In re V.V.*, *supra*, 51 Cal.4th at p. 1028.)

In *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, the defendant was convicted of conspiracy to commit arson to his own property and vandalism to a neighbor's property also damaged by the fire.  The court rejected Kurtenbach's contention that vandalism requires that a criminal defendant act maliciously toward the victim, noting that there are two types of malice—"malice in fact" and "malice in law"— as explained in the Supreme Court's decision in *In re V.V.*  (*Kurtenbach*, *supra*, 204 Cal.App.4th at p. 1281.)

But the Supreme Court noted in *In re V.V.* that "'[m]alice as universally understood by the popular mind has its foundation in ill-will'" and "'"malice, in common accept[ance], means ill-will against a person"'" in contrast to its "legal sense" where it "'"means a wrongful act, done intentionally, without just cause or excuse."'"  (*In re V.V.*, *supra*, 51 Cal.4th at p. 1028.)  In short, the Supreme Court's discussion acknowledges that the "legal sense" of malice or "malice in law" is not the same as the "ordinary and popular sense" of malice, which is malice in fact.  In interpreting a policy we look to "the language of the [insurance policy] in order to ascertain the plain meaning or the meaning a layperson would ordinarily attach to it."  (*Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 18; see *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, *supra*, 5 Cal.4th at p. 867 ["The reliance on common understanding of language is bedrock"]; *Montrose Chem. Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 ["If *the meaning a layperson would ascribe* to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning" italics added].)  The Supreme

8

Court has stated that malice as "universally understood by the popular mind" involves "ill-will" and not simply a wrongful, intentional act done without justification, excuse or mitigating circumstances. (*In re V.V.*, *supra*, 51 Cal.4th at pp. 1027-1028.) Thus, the reasonable interpretation of "vandalism" as used in the policy exclusion means malicious destruction or defacement where there is malice in fact or actual ill-will or intent to injure. (*In re V.V.*, *supra*, 51 Cal.4th at p. 1028.)[8]

Defendant argues that a number of other jurisdictions have "recognized that intentionally set fires satisfy the 'vandalism' component of the vacancy exclusion." We do not find these cases to be persuasive. None appear to involve an "uncontrolled warming fire" or a "warming fire [that] got out of hand." Indeed, some involved fires where an accelerant was used (see, e.g., *Battishill v. Farmers Alliance Ins. Co.* (2006) 139 N.M. 24, 25-29 [arson case with accelerant at three sites and evidence of "pour" patterns]; *Costabile v. Metro. Prop. & Cas. Ins. Co.* (D. Conn. 2002) 193 F.Supp.2d 465, 479), suggesting malice in fact.[9] Other cases involve a fire started by an "unidentified arsonist" (*American Mut. Fire Ins. Co. v. Durrence* (11th Cir. 1989) 872 F.2d 378 (*per curiam*)) or a fire that parties stipulated "'was intentionally set by an unknown arsonist and/or vandal'" (*Estes v. St. Paul Fire & Marine Ins. Co.* (D. Kan. 1999) 45 F.Supp.2d

---

[8] We note that even if the plain meaning of "malice" included malice in the legal sense—i.e., that it can be presumed from a wrongful act, done intentionally and without justification, excuse of mitigating circumstances—we believe that there would be a question of fact as to whether there were mitigating circumstances in this case precluding summary adjudication as Childress's report indicated that the transient may have attempted "to throw burning wood outside when the warming fire got out of control." In contrast, in *In re V.V.*, the record indicated that the minors "were yelling, laughing, 'high-fiving,' and seemingly having a good time moments after they realized the hillside was on fire." (*In re V.V.*, *supra*, 51 Cal.4th at p. 1031.)

[9] In another case, the court concluded that, although arson was included in the vandalism exclusion, summary judgment was inappropriate as there was a factual dispute as to the cause of the fire. (*Bear River Mut. Ins. Co. v. Williams* (Utah App. 2006) 153 P.3d 798, 801.)

9

1227, 1229).[10]  Here, in contrast, the transient apparently kicked the firewood in an attempt to knock it out the door and stop the spread of the fire and the fire was "unintentional[ly] incendiary."

While a vacancy exclusion serves "to protect the insurer against the increased risks of loss that occur when premises are vacant for an extended period of time" (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 29-30; see *Belgrade v. National American Ins. Co.* (1962) 204 Cal.App.2d 44, 47), such an exclusion does not protect against all increased property risks but only those within its terms.  Defendant as the party drafting the policy had the opportunity to include property risks other than vandalism in its vacancy exclusion.  For example, in *TRB Investments, Inc.*, *supra*, 40 Cal.4th at page 23, the vacancy exclusion in the policy at issue in that case excluded not only vandalism, but also sprinkler leakage, glass breakage, water damage, theft and attempted theft.  (See Crosky, et al., Cal. Prac. Guide: Insurance Litigation, *supra*, ¶ 6:357, p. 6B-76 [listing possible vacancy exclusions for "damage caused by (vandalism, theft, water damages, etc.)"].)  Here, the vacancy exclusion in Plaintiff's policy was limited to "vandalism and malicious mischief."[11]  Defendant could have listed fire as a risk excluded under a vacancy provision but did not do so.[12]  (*MacKinnon v. Truck Ins. Exchange*, *supra*, 31 Cal.4th at p. 648 [policy exclusions are strictly construed]; see Crosky, et al., Cal. Prac. Guide: Insurance Litigation, *supra*, ¶ 4:407, p. 4-70 ["As drafter of the policy, the insurer is responsible for any ambiguity therein"].)

---

[10] At oral argument, this Court accepted from Plaintiff a list of seven out-of-state cases which found arson and vandalism to be separate perils and allowed Defendant time to submit a list of additional out-of-state cases.

[11] In the policy under "Permissions Granted," it states that "The **residence premises** may be vacant or unoccupied without limit of time, except where this policy states otherwise."

[12] Indeed, as previously mentioned, California's standard form fire insurance statute allows an insurer to exclude liability for a fire loss occurring when a covered property is vacant or unoccupied beyond a period of 60 consecutive days.  (Ins. Code, § 2071.)

10

Based on our conclusions above, we do not address Plaintiff's remaining arguments.

## DISPOSITION

The trial court's grant of summary judgment is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.  Plaintiff is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION.


CHANEY, J.


I concur:


JOHNSON, J.

11

Rothschild, P. J., dissenting:

I disagree with the majority opinion's reasoning and result.  I therefore respectfully dissent.

It appears to be undisputed that the insurer's investigators concluded that a transient intentionally started the fire on the floor of the kitchen in order to keep warm but did not intend the fire to grow as large and destructive as it did.  The question is whether such a fire constitutes vandalism.

The majority reasons that because the common understanding of malice requires actual ill will or intent to injure, the undisputed facts do not show that the fire was vandalism.  I am not persuaded.

The Merriam-Webster dictionary definition of "vandalism," which the majority quotes from the superior court's ruling, says that vandalism is "willful or malicious destruction or defacement of public or private property."  (Maj. opn., p. 7, internal quotation marks omitted.)  Vandalism thus need not be malicious, as long as it is willful. In this context, "willful" means "done deliberately" and is synonymous with "intentional."  (Merriam-Webster's Online Dict. <http://www.merriam-webster.com/dictionary/willful> [as of April 1, 2015].)

The majority disposes of the issue of willfulness in a footnote, reasoning that because there is evidence that the transient tried "to stop the spread of the fire," there is "a triable issue of fact as to whether the fire was intended to be destructive of property." (Maj. opn., p. 7, fn. 7.)  I do not agree that the transient's apparent efforts to stop the spread of the fire create a disputed issue of fact as to whether intentionally starting a fire on the kitchen floor is willful destruction or defacement of property.  Starting such a fire would inevitably damage or deface the floor.  It therefore constitutes vandalism under the Webster's dictionary definition.  And it does not matter that the person who started the fire did not intend for it to become as destructive as it did.  The insurance policy exclusion applies to both direct and indirect loss from vandalism.  Starting the fire was vandalism (because it was willful destruction or defacement), so the loss resulting from the fire is not covered.

It also does not matter that the person who started the fire did it to keep warm. What is relevant is that someone intentionally started the fire on the kitchen floor, which constitutes willful destruction or defacement of property.

I find the majority's analysis of the issue of malice similarly unpersuasive. The majority explains that malice in fact "consists of actual ill will or intent to injure." (Maj. opn., p. 8.) For the same reasons that the undisputed facts show willful destruction or defacement, they also show intent to injure—the person who started the fire intentionally damaged the kitchen floor. Again, it does not matter that the person who started the fire did it to keep warm or did not intend the fire to become as destructive as it did. Intentionally starting a fire on the kitchen floor constitutes intentionally damaging (or injuring) the kitchen floor, so the undisputed facts show intent to injure.

In my view, although one can sympathize with plaintiff for the loss he has suffered, in this lawsuit he is seeking to recover benefits for which he did not pay. The damage was caused by a fire started on the kitchen floor (not in a fireplace) by a transient. That is the kind of willful destruction that becomes much more likely when the property is left vacant for an extended period. Therefore, in addition to fitting within the literal terms of the exclusion, it seems like the kind of thing to which the exclusion ought, in fairness, to apply. Plaintiff did not pay for insurance for this loss.

For all of the foregoing reasons, I would affirm the judgment of the superior court. I therefore respectfully dissent.

ROTHSCHILD, P. J.

2